PEOPLE v FONVILLE

Docket No. 294554. Submitted October 6, 2010, at Detroit. Decided January 25, 2011, at 9:00 a.m.

Derek Fonville pleaded guilty in the Oakland Circuit Court to one count of child enticement, MCL 750.350, as part of a plea agreement whereby the prosecution agreed to drop a second child enticement charge. The plea bargain included a *Cobbs* agreement, *People v Cobbs*, 443 Mich 276 (1993), that the trial court would impose a sentence at the low end of the sentencing guidelines recommended minimum sentence range. The court, Denise Langford Morris, J., accepted the plea. At a subsequent sentencing hearing, defendant asked to withdraw his plea, asserting his innocence and that he would not have pleaded guilty had he known that his conviction would require him to register as a sex offender under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.* The court granted defense counsel's motion to withdraw as counsel and defendant, represented by new counsel, again moved to withdraw his plea. The court denied the motion to withdraw the plea, holding that the plea was valid, that defendant had entered into a *Cobbs* agreement, that the prosecution was the sole charging authority, that nothing indicated that defendant was innocent, and that defendant admitted the facts that supported his plea. The court determined that the plea was knowing, voluntary, and accurate and sentenced defendant to 51 months to 20 years in prison. The court then denied defendant's motion to withdraw his plea after sentencing. The Court of Appeals denied defendant's delayed application for leave to appeal in an unpublished order, entered October 31, 2007 (Docket No. 280968). The Supreme Court then denied leave to appeal. 480 Mich 1136 (2008). Defendant moved in the trial court for relief from the judgment, and the trial court denied that motion and a subsequent motion for reconsideration. The Court of Appeals granted defendant's application for leave to appeal.

The Court of Appeals *held*:

1. An inculpatory inference could be drawn from defendant's admission that, although he originally had permission from his friend to take her two children with him, he later fraudulently

detained them by driving around and using drugs until the next afternoon while the children were in his car instead of returning them at the agreed-upon time. Defendant's admissions fit the elements of child enticement. The trial court did not abuse its discretion by denying defendant's motion to withdraw his plea. Defendant did not demonstrate, as required by MCR 6.310(B), that the withdrawal of his plea would be in the interest of justice. Moreover, defendant did not argue that he was actually innocent of the alleged conduct. He voluntarily pleaded guilty pursuant to a valid plea agreement.

2. Although the offense of child enticement includes no express sexual component as a requirement for a conviction, the Legislature deemed registration under SORA for those convicted of child enticement a necessary measure to protect the safety and welfare of the children of this state. Requiring registration as a sex offender following a conviction for a listed offense is not punishment. Registration is not a punitive measure intended to chastise, deter, or discipline an offender, but it is merely a remedial regulatory scheme furthering a legitimate state interest.

3. Defense counsel's failure to move to quash the information was not ineffective assistance of counsel because sufficient evidence was presented at the preliminary examination to support the bindover.

4. For purposes of determining whether defense counsel provided effective assistance in the context of a guilty plea, a defendant need only be made aware by defense counsel of the direct consequences of a guilty plea. The defendant's ignorance of the collateral consequences of the plea does not render the plea involuntary. Counsel's failure to properly advise of the collateral consequences of a plea deal does not bear on whether the defendant properly understood the decision to plead guilty to the charges.

5. Because of its close connection to the criminal process, sex offender registration as a consequence of a criminal conviction is difficult to classify as either a direct or a collateral consequence. Therefore, the collateral versus direct distinction is ill-suited to evaluate an ineffective-assistance-of-counsel claim concerning sex offender registration. The automatic result of sex offender registration for certain defendants makes it difficult to divorce the penalty from the conviction. Defense counsel's duty to give correct advice regarding the registration requirement is clear when, as here, the sex-offender-registration statute is succinct, clear, and explicit in defining the registration requirement.

6. Defense counsel must advise a defendant that registration as a sexual offender is a consequence of a guilty plea to a listed

offense. The failure to inform the defendant affects whether the plea was knowingly made. Defendant in this case showed serious derelictions on the part of his counsel sufficient to show that his plea was not a knowing and intelligent act.

7. Defense counsel's failure to advise defendant that his plea would require him to register as a sex offender prejudiced defendant to the extent that, but for counsel's error, the result of the proceeding would have been different. Although the registration requirement does not constitute cruel and unusual punishment in the context of the charge against defendant, given the lack of a sexual component to defendant's conduct, it was imperative that his counsel advise him of the unique registration consequences of his plea.

Reversed and remanded for further proceedings.

JANSEN, J., concurring in part and dissenting in part, agreed that defense counsel rendered ineffective assistance of counsel by failing to inform defendant that his plea would require him to register as a sex offender. Judge JANSEN dissented from the determination that there was a sufficient factual basis to support · defendant's guilty plea. There was no evidence that defendant acted with the requisite specific intent to detain or conceal the children from their mother. Because there was an insufficient factual basis for the plea, the trial court erred by accepting the plea. The matter should be remanded to the trial court with instructions to permit defendant to withdraw his plea.

1. CRIMINAL LAW — GUILTY PLEAS — FACTUAL BASIS FOR GUILTY PLEAS — INCULPATORY INFERENCES — EXCULPATORY INFERENCES.

When reviewing whether the factual basis for a defendant's guilty plea was adequate, the Court of Appeals considers whether the fact-finder could have found the defendant guilty on the basis of the facts elicited from the defendant at the plea proceeding; a factual basis to support a plea exists if an inculpatory inference can be drawn from what the defendant admitted, even if an exculpatory inference could also be drawn and the defendant asserts that the latter is the correct inference; even if the defendant denies an element of the crime, the trial court may properly accept the plea if an inculpatory inference can still be drawn from what the defendant admitted.

2. CRIMINAL LAW — GUILTY PLEAS — MOTIONS TO WITHDRAW GUILTY PLEAS — FAIR AND JUST REASONS TO WITHDRAW PLEAS.

A court should grant a motion to withdraw a guilty plea before sentencing only if the defendant shows that withdrawal of the plea

is in the interest of justice, which requires the defendant to articulate a fair and just reason for withdrawing the plea; fair and just reasons include claims of actual innocence or a valid defense to the charge, not dissatisfaction with the sentence or incorrect advice from defense counsel (MCR 6.310[B]).

3. CRIMINAL LAW — CHILD ENTICEMENT — SEX OFFENDERS REGISTRATION ACT — REGISTRATION OF PERSONS CONVICTED OF CHILD ENTICEMENT.

The offense of child enticement involves the leading, taking, carrying away, decoying, or enticing away of a child under 14 yeas of age with the intent to detain or conceal the child from the child's parent; although the offense includes no express sexual component as a requirement for a conviction of the offense, the Legislature has deemed registration under the Sex Offenders Registration Act for those convicted of that offense a necessary measure to protect the safety and welfare of children in the state; requiring persons convicted of offenses listed in the Sex Offenders Registration Act to register is not punishment or a punitive measure intended to chastise, deter, or discipline an offender, but it is merely a remedial regulatory scheme furthering a legitimate state interest and does not constitute cruel or unusual punishment, (MCL 28.721a, 28.722[e][*vii*], 28.723, 750.350).

4. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL — BURDEN OF PROOF.

A defendant asserting a claim of ineffective assistance of counsel must show that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that defense counsel's deficient performance so prejudiced the defendant that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different; in this process, the defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy.

5. CRIMINAL LAW — ATTORNEY AND CLIENT — GUILTY PLEAS — CONSEQUENCES OF PLEAS — EFFECTIVE ASSISTANCE OF COUNSEL.

A defendant need only be made aware of the direct consequences of a guilty plea in order for the defendant's counsel to provide effective assistance; a defendant's ignorance of the collateral consequences of a plea does not render the plea involuntary, and counsel's failure to properly advise regarding the collateral consequences of a plea does not bear on whether the defendant properly understood the decision to enter the plea.

6. CRIMINAL LAW — ATTORNEY AND CLIENT — GUILTY PLEAS — SEX OFFENDERS
   REGISTRATION ACT — EFFECTIVE ASSISTANCE OF COUNSEL.

   To provide effective assistance of counsel, defense counsel must
   advise a defendant contemplating a plea of guilty with regard to an
   offense listed in the Sex Offenders Registration Act that as a
   consequence of the guilty plea, the defendant will be required to
   register under the act; a failure to provide that information affects
   whether the plea was knowingly made (MCL 28.721 *et seq.*).

*Bill Schuette*, Attorney General, *B. Eric Restuccia*,
Solicitor General, *Jessica R. Cooper*, Prosecuting Attor-
ney, *John S. Pallas*, Chief, Appellate Division, and
*Janice A. Kabodian*, Assistant Prosecuting Attorney, for
the people.

*Terence R. Flanagan* for defendant.

Before: FORT HOOD, P.J., and JANSEN and WHITBECK,
JJ.

WHITBECK, J. Defendant, Derek Fonville, appeals by
leave granted the trial court's order denying his motion
for relief from judgment. Fonville pleaded guilty to a
count of child enticement[1] as part of a plea bargain. We
reverse and remand the matter to the trial court.

I. BASIC FACTS

The circumstances from which this action arises
involve the two children of Fonville's girlfriend: JR 1
(aged 10) and JR 2 (aged 8). On the evening of April 19,
2006, the children's mother voluntarily placed them in
Fonville's care while she was at work. However, Fonville
failed to return the children at the agreed-upon time;
instead, he kept them through the night and well into
the next day. The police recovered the children during
the afternoon of April 20, 2006. The children were tired,

---

[1] MCL 750.350.

but unharmed. The prosecution accused Fonville of detaining the children in his vehicle while he and a friend were driving around under the influence of alcohol and drugs.

The prosecution originally charged Fonville with two counts of child enticement and two counts of kidnapping.[2] Following the preliminary examination, the district court bound Fonville over on the original counts, holding as follows:

> While it was clear that [Fonville] did have consent to have the children when he first took them on April 19th, his job at that point in time, for lack of a better word, was to keep an eye on the kids while [their mother] went to work and that he would pick her up later. And the understanding was that the kids would be returned to her at that point in time. While he had consent the fact of the matter is he did not have consent to keep the kids overnight. He even admitted the same to Detective [Lawrence] Fetherolf that he did keep the kids overnight; took them on a number of different journeys out to Pontiac it sounds like. And did not return the children home at any point during the night of the 19th or the morning of the 20th even when [JR 1] . . . requested that he be allowed to go home. He was told "no" at that point in time. The testimony of Detective Fetherolf was that [Fonville] felt it more important to take care of [his friend] . . . than to return the children to their mother at that point in time. So, I think the best you've got is a question of fact. The matter will be bound over to circuit court on all charges and bond will be continued.

In an amended information, the prosecution dropped the two kidnapping charges and kept only the two counts of child enticement. Pursuant to an agreement with the prosecution, Fonville agreed to enter a guilty plea to one count of child enticement in exchange for the prosecution's dropping the other count of child

---

[2] MCL 750.349.

enticement. Fonville's plea bargain included a *Cobbs*[3] agreement, which was that the trial court would sentence him at the low end of the sentencing guidelines recommended minimum sentence range.

At a September 2006 plea proceeding, defense counsel stated that he had explained the plea bargain to Fonville and Fonville's mother. Fonville agreed on the record that it was his understanding that he would enter the *Cobbs* plea with a minimum-sentence cap of 51 months and that he would be able to withdraw his plea if the minimum sentence went beyond that. The trial court then went on to accept Fonville's guilty plea. During the trial court's questioning, Fonville stated that, on April 20, 2006, he "pretty much endangered two young kids" by "doing drugs and driving around with them in the car." Fonville acknowledged that the children were less than 14 years old. He admitted that he and a friend were using cocaine at the time the children were with him. Fonville also agreed with the prosecution that he and his friend repeatedly drove to Pontiac to get crack cocaine and that the children were with them. He agreed that his addiction to crack cocaine was "feeding" his mind. Fonville acknowledged that he knew that he was supposed to return the children to their home at 11:00 p.m. on April 19. He agreed that "because of getting crack and everything," he "ended up . . . keeping the kids with [him], driving around from 11 p.m. at night through 2 p.m. in the afternoon the next day[.]" The prosecution asked him, "So you fraudulently detained these kids, correct?";

---

[3] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993) (indicating that a *Cobbs* agreement is one in which a defendant agrees to plead guilty or no contest in reliance on the trial court's preliminary evaluation of the sentence; however, the defendant is allowed to withdraw the plea in the event that the trial court determines that it must exceed the preliminary evaluation).

Fonville answered, "Yes." The prosecution and the defense indicated their satisfaction with the factual basis for Fonville's plea to the charge of child enticement. And the trial court stated that it was satisfied that Fonville's plea was knowingly, voluntarily, and accurately made.

However, at the September 2006 sentencing hearing, defense counsel informed the trial court that Fonville wished to withdraw his plea. Defense counsel explained that Fonville wished to withdraw his plea because the plea agreement would encompass the requirement that he register as a sex offender. Fonville then addressed the trial court and stated that he wanted a jury trial. Fonville asserted that his defense counsel had told him that he would be making a "big mistake going to trial." He further explained:

> When I came into the court on the 13th of September, I sat in the holding cell all day and never came to court cause my lawyer set a court date with the prosecutor indicating to him that I would take a [*Cobbs*] plea, when I did not. That's why I never came into court that day, because I was supposed to notify my lawyer and if I wanted to plead to get hold of him, and I never agreed to it. So, naturally, I didn't come to court.

> So then I came back into court on the 15th of September, that following Friday, and that's when my lawyer kept telling me to taking [sic] a *Cobbs* plea, four years to ten. I told him numerous times I wanted a jury. That's when he said a second time I was making a mistake.

> So, when I came into court the 15th of September my lawyer came in a third time and said to my mom, you should take the plea. While the prosecutor was talking to my mom, I looked at my mom and she said "take it". So, I did, thinking she was looking out for my best interest, even though I didn't do this. When I talked to my mom later that evening she said the prosecutor said he knew I didn't

kidnap those kids and he said to my mom if I went to trial
that he would have to play hardball.

Fonville denied the enticement charge, stating: "I
would never lure a kid or kidnap anyone. It's a hard pill
to swallow especially when I would never force [JR 2] or
[JR 1] to do something they didn't want to do. I love
kids and always try to help if I can." The trial court
indicated that it needed to review the plea transcript, so
it adjourned sentencing.

Before the trial court could reconvene for sentencing,
Fonville's attorney moved to withdraw as counsel for
Fonville, which the trial court granted. And in January
2007, Fonville, represented by new counsel, again
moved to withdraw his plea. Although admitting child
endangerment, Fonville asserted in his motion that he
should be allowed to withdraw his plea because he had
no "evil, criminal intent," merely "reckless criminal
intent." The prosecution responded, asserting that Fon-
ville's admission that he fraudulently detained the
children supported the plea.

At a February 2007 hearing on the motion, defense
counsel asserted that Fonville had entered his plea on
the basis of inaccurate and misleading advice of his
former counsel and that he was innocent of the charge
of child enticement. Defense counsel asserted that when
Fonville was told that he could plead guilty of child
enticement instead of kidnapping, he did not under-
stand that both kidnapping and child enticement car-
ried potential life sentences. Defense counsel contended
that the facts did not support a conviction of child
enticement, noting that the children were unharmed.
Defense counsel argued that the factual basis for the
plea only supported a conviction of second-degree child
abuse, to which Fonville was willing to plead guilty.

The prosecution responded, noting that the transcript of the plea proceedings clearly showed that Fonville acknowledged that he understood that the maximum sentence for child enticement is life in prison. The prosecution further argued that the facts as pleaded showed that Fonville had committed the offense of child enticement. The prosecution pointed out that Fonville did not claim innocence: he admitted that he fraudulently detained the children by concealing their whereabouts from their mother while he was driving around looking for cocaine. Thus, the prosecution contended that Fonville had not demonstrated that the requested plea withdrawal would be in the interest of justice. The prosecution additionally argued that permitting Fonville to withdraw his plea would result in substantial prejudice. In support of this position, the prosecution noted that if the case went to trial, the children would have to testify. According to the prosecution, this would be extremely difficult for them because they would have to be psychologically prepared to do so.

Considering Fonville's motion, the trial court held that (1) Fonville's plea was valid, (2) Fonville entered into a *Cobbs* agreement, (3) the prosecutor was the sole charging authority, (4) nothing indicated that Fonville was innocent, and (5) Fonville admitted the facts supporting his plea. The trial court ultimately reasoned:

> . . . I understand that those are the types of allegations that, quite frankly, could be made in a lot of cases and not constituting child enticement, but the requirement to go forward with a child enticement charge, again, is not within the province of the Court finding that that would outweigh the benefits of the finality and all the other issues associated and have been set forth by the People.
>
> The Court also notes that the Court gave [Fonville] a *Cobbs* impression [sic] which was to the, basically, the bottom of the guidelines and so given the totality of

circumstances and for the reasons as set forth by the
People, [Fonville's] motion to withdraw his plea is denied.

At the subsequent sentencing hearing, defense counsel acknowledged the *Cobbs* agreement for the trial court not to exceed the guidelines minimum of 51 months, but he attempted to persuade the trial court to deviate below that minimum. Defense counsel noted Fonville's history with the children, the fact that the children were not harmed, and the fact that the children's mother had submitted a letter stating that he did not deserve jail time.

To the extent that Fonville was seeking again to withdraw his plea, the trial court reiterated that Fonville's plea was knowing, voluntary, and accurate. It found no basis for permitting the withdrawal. The trial court then provided Fonville with his opportunity for allocution, and Fonville told the trial court:

> On April 20th, 2006 I had possession of my girlfriend's two young children, [JR 1], age ten, and [JR 2], age eight.
>
> I was supposed to return the two children to the mother at 11 p.m. . . . I did not do so. Instead I retained possession of the children until I was apprehended by the police at 12:15 p.m., in the afternoon of April 21st, 2006.
>
> I admitted that I did not return on time and I kept the children in the car with me while I drove around Oakland County looking for cocaine continuously from 11 p.m. until apprehended by police the next day at 12:15 p.m. on April 21st, 2006.
>
> However, there's one important fact, which is, that approximately one hour before being apprehended Waterford Police investigated my vehicle, questioned . . . me [and] a passenger . . . , and the two children, who were playing basketball, and all were released to go on our way . . . .

\* \* \*

... I plead [sic] guilty .... At ... the date of sentence, I read a letter to the Court detailing why I wanted to withdraw my plea. I essentially stated that I did not receive accurate advice and claimed my innocence to kidnapping. In addition, I never realized that I would go down as a sexual offender.

I always thought I was guilty of some sort of child endangerment charge because of my actions, not an enticement charge, which denotes some kind of evil criminal intent as oppose [sic] to reckless intent. . . .

\* \* \*

... I would like to say that with child enticement on my record makes me a sexual predator.

I will never make the money I'm used to making and my career will be over.

I had permission to have these children, which I've had permission before. So how can I be charged with child enticement . . . .

\* \* \*

I did put them [sic] children in a bad situation and I am sorry that my addiction took over. I was drinking along with taking xanax, which literally made me blackout. That's the real reason I'm in this situation. The fact of the matter is, yes, I should be punished, but enticement is not even chose [sic] to child abuse.

Again, to the extent that Fonville sought to withdraw his plea, the trial court denied the request. The trial court then sentenced Fonville to a term of 51 months to 20 years in prison.

Fonville moved to withdraw his plea after sentencing, arguing again that the facts did not support the charge of child enticement. But the trial court denied the motion, finding that Fonville had failed to present any new issues.

Fonville filed a delayed application for leave to appeal, challenging the constitutionality of the child-enticement statute, the prosecution's choice to charge him with child enticement, and the denial of his motion to withdraw his plea on the basis of ineffective assistance of counsel, coercion, and prosecutorial misconduct. This Court denied the application for lack of merit.[4] The Michigan Supreme Court also denied his application for leave to appeal.[5]

Fonville then moved in the trial court for relief from judgment, raising the same issues that he now brings on appeal. The trial court held that Fonville had not demonstrated good cause for having failed to raise these issues in his earlier application for leave to appeal and that he had failed to show actual prejudice. The trial court concluded that defense counsel's failure to inform Fonville of the collateral consequences of the plea, namely inclusion on the sex offender registry, did not constitute ineffective assistance of counsel. The trial court further found "no irregularity so offensive to the maintenance of a sound judicial process that [Fonville's] conviction should not be allowed to stand." Accordingly, the trial court denied Fonville's motion. Fonville moved for reconsideration, but the trial court denied the motion.

Fonville now appeals by leave granted.

## II. CLAIMS ON APPEAL

### A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial

---

[4] *People v Fonville,* unpublished order of the Court of Appeals, entered October 31, 2007 (Docket No. 280968).

[5] *People v Fonville,* 480 Mich 1136 (2008), reconsideration den 481 Mich 881 (2008).

court's denial of a defendant's motion for relief from judgment.[6] This Court also reviews for an abuse of discretion a trial court's denial of a defendant's motion to withdraw a plea.[7] An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes.[8] Moreover, this Court reviews de novo constitutional issues.[9]

### B. LEGAL STANDARDS

According to MCR 6.508(D), a defendant seeking relief from judgment has the burden of establishing entitlement to such relief. MCR 6.508(D)(3) also states that a court may not grant that relief if, among other things, the motion

> alleges grounds for relief . . . which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates:
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
>
> \* \* \*
>
> (ii) in a conviction entered on a plea of guilty, . . . the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;
>
> (iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction

---

[6] *People v Ulman*, 244 Mich App 500, 508; 625 NW2d 429 (2001).

[7] *People v Billings*, 283 Mich App 538, 549; 770 NW2d 893 (2009).

[8] *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

[9] *People v McGee*, 258 Mich App 683, 699; 672 NW2d 191 (2003).

should not be allowed to stand regardless of its effect on the outcome of the case[.]

\* \* \*

The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

### C. WITHDRAWAL OF PLEA

Fonville argues that he should be allowed to withdraw his plea to the charge of child enticement because he has consistently maintained his innocence of the crime, the plea was entered on the basis of an incorrect charge, and there was an insufficient factual basis to support a conviction.

When reviewing whether the factual basis for a plea was adequate, this Court considers whether the factfinder could have found the defendant guilty on the basis of the facts elicited from the defendant at the plea proceeding.[10]

"A factual basis to support a plea exists if an inculpatory inference can be drawn from what the defendant has admitted. This holds true even if an exculpatory inference could also be drawn and the defendant asserts that the latter is the correct inference. Even if the defendant denies an element of the crime, the court may properly accept the plea if an inculpatory inference can still be drawn from what the defendant says."[11]

Additionally, MCR 6.310(B) provides, in pertinent part, that a motion to withdraw a plea before sentencing should only be granted if the defendant is able to show

---

[10] *People v Adkins*, 272 Mich App 37, 38; 724 NW2d 710 (2006).

[11] *People v Thew*, 201 Mich App 78, 85; 506 NW2d 547 (1993), quoting *People v Jones*, 190 Mich App 509, 511-512; 476 NW2d 646 (1991) (citations omitted).

that withdrawal of the plea is "in the interest of justice," meaning that the defendant has to articulate "a fair and just reason" for withdrawing the plea.[12] Fair and just reasons include reasons like a claim of actual innocence or a valid defense to the charge.[13] Things that are not considered fair and just reasons are dissatisfaction with the sentence or incorrect advice from the defendant's attorney.[14]

Fonville pleaded guilty of child enticement. MCL 750.350(1) defines that crime as follows:

> A person shall not maliciously, forcibly, or fraudulently lead, take, carry away, decoy, or entice away, any child under the age of 14 years, with the intent to detain or conceal the child from the child's parent or legal guardian, or from the person or persons who have adopted the child, or from any other person having the lawful charge of the child.

At the plea proceeding, Fonville testified that he "pretty much endangered two young kids[.]" He did this by "doing drugs and driving around with them in the car." He admitted that he and his friend were driving around with the children while getting crack cocaine. He admitted that he knew that he was supposed to return the children to their mother at 11:00 p.m. and that he had told both the children and their mother that this was what he was going to do. "But [he] ended up because of getting crack and everything keeping the kids with [him], driving around from 11 p.m. at night through 2 p.m. in the afternoon the next day . . . ." Fonville agreed that he had "fraudulently detained" the children.

---

[12] *People v Wilhite*, 240 Mich App 587, 594; 618 NW2d 386 (2000) (quotation marks and citation omitted).

[13] *Id.* at 596.

[14] *Id.* at 596-597; *People v Haynes (After Remand)*, 221 Mich App 551, 559; 562 NW2d 241 (1997).

Given that Fonville's admissions were in line with the elements of the charged crime, we conclude that the trial court did not abuse its discretion by denying his motion to withdraw his plea. An inculpatory inference can be drawn from what Fonville admitted. That is, although he originally might have had consent to take the children, he admitted that he later fraudulently detained them by driving around and doing drugs until the next afternoon while the children were in the car instead of returning them at 11:00 p.m. as agreed upon with their mother.

Fonville did not sufficiently demonstrate that withdrawal of his plea was in the interest of justice. Moreover, although Fonville claimed that he was innocent of the crime as charged because he did not have an "evil intent," he never argued that he was actually innocent of the alleged conduct. The prosecution has authority to choose appropriate charges,[15] and Fonville voluntarily pleaded guilty to the charge pursuant to a valid plea agreement placed on the record.

### D. CRUEL AND UNUSUAL PUNISHMENT

Fonville argues that the requirement that he register as a sex offender when there was absolutely no sexual component to the offense committed amounts to cruel and unusual punishment under the Michigan Constitution. He contends that, at minimum, he should be entitled to an order removing his name from the sex offender registry.

The Sex Offenders Registration Act (SORA)[16] requires persons convicted of certain listed offenses to register as sex offenders.[17] The listed offenses include

---

[15] *People v Williams*, 186 Mich App 606, 609-610; 465 NW2d 376 (1990).

[16] MCL 28.721 *et seq.*

[17] MCL 28.723.

child enticement.[18] Child enticement involves the leading, taking, carrying away, decoying, or enticing away of a child under 14 years of age with the intent to detain or conceal the child from the child's parent. Thus, Fonville is correct that the offense of child enticement includes no express sexual component as a requirement for a conviction of the offense.

However, the Legislature has made clear that the intended purpose of SORA is to protect public safety and monitor those persons who pose a potential danger to children:

> The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. *The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state.* The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.[19]

Thus, although the offense of child enticement includes no express sexual component as a requirement for a conviction of the offense, the Legislature has nevertheless deemed registration for those convicted of that crime to be a necessary measure to protect the safety and welfare of the children of this state. And in this case, Fonville admitted that his conduct, while not sexual in nature, "endangered two young kids[.]"

---

[18] MCL 28.722(e)(*vii*); MCL 750.350.

[19] MCL 28.721a (emphasis added).

Moreover, requiring that a defendant comply with the statutory mandate that the defendant register as a sex offender following a conviction of a listed offense is not punishment. Although a defendant may see registration as a penalty for a conviction of a listed offense, it is not actually a punitive measure " 'intended to chastise, deter or discipline an offender.' "[20] It is merely a "remedial regulatory scheme furthering a legitimate state interest."[21]

To the extent that Fonville argues that we should follow *People v Dipiazza*,[22] we disagree because that case is factually distinguishable. In *Dipiazza*, this Court held that requiring the defendant in that case to register as a sex offender was cruel or unusual punishment.[23] However, in that case, after the defendant completed probation, his case was dismissed under the terms of the Holmes Youthful Trainee Act,[24] leaving him with no conviction on his record.[25] Despite the dismissal of his case, because he was assigned to youthful-trainee status on August 29, 2004, he continued to remain required to register as a sex offender, whereas after amendments of SORA, a defendant assigned to youthful-trainee status after October 1, 2004, was not required to register (unless the defendant's status of youthful trainee was revoked and an adjudication of guilt was entered).[26] This Court concluded that, under those circumstances, requiring the defendant to register as a sex offender

---

[20] *People v Golba*, 273 Mich App 603, 617; 729 NW2d 916 (2007), quoting *Doe v Kelley*, 961 F Supp 1105, 1108 (WD Mich, 1997).

[21] *Golba*, 273 Mich App at 617.

[22] *People v Dipiazza*, 286 Mich App 137; 778 NW2d 264 (2009).

[23] *Id.* at 156.

[24] MCL 762.11 *et seq.*

[25] *Dipiazza*, 286 Mich App at 140.

[26] *Id.* at 140, 143.

was cruel or unusual punishment.[27]

Conversely, there has been no similar amendment of the statutory scheme under which Fonville pleaded guilty and his case has not been dismissed. Therefore, we disagree that the reasoning in *Dipiazza* applies in this case.

### E. EFFECTIVE ASSISTANCE OF COUNSEL

Fonville argues that he did not receive effective assistance of counsel because his defense counsel failed to move to quash the information, which he alleges overcharged him. Fonville also argues that he did not receive effective assistance of counsel because his defense counsel failed to advise him that his conviction of child enticement would require that he register as a sex offender. While we disagree with his first contention, we find merit in the second.

In asserting a claim of ineffective assistance of counsel, a defendant must show (1) that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that defense counsel's deficient performance so prejudiced the defendant that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[28] In proving these elements, the defendant must overcome a strong presumption that defense counsel's performance constituted sound trial strategy.[29] Absent an evidentiary

---

[27] *Id.* at 156.

[28] *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); see also *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

[29] *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003).

hearing, this Court's review of counsel's performance is limited to mistakes apparent on the record.[30]

### 1. FAILURE TO MOVE TO QUASH THE INFORMATION

To the extent that Fonville argues that he did not receive effective assistance of counsel because his defense counsel failed to move to quash the information, Fonville has not properly presented this argument to this Court because he failed to identify it as an issue in his statement of questions presented.[31] Therefore, he has waived this issue for appellate review.[32]

We note, however, that a motion to quash the information would have been futile. As stated, following the preliminary examination, the district court bound Fonville over on the original counts, including child enticement, holding as follows:

> While it was clear that [Fonville] did have consent to have the children when he first took them on April 19th, his job at that point in time, for lack of a better word, was to keep an eye on the kids while [their mother] went to work and that he would pick her up later. And the understanding was that the kids would be returned to her at that point in time. While he had consent the fact of the matter is he did not have consent to keep the kids overnight. He even admitted the same to Detective Fetherolf that he did keep the kids overnight; took them on a number of different journeys out to Pontiac it sounds like. And did not return the children home at any point during the night of the 19th or the morning of the 20th even when [JR 1] . . . requested that he be allowed to go home. He was told "no" at that point in time. The testimony of Detective Fetherolf was that [Fonville] felt it more important to take care of

---

[30] *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

[31] MCR 7.212(C)(5); *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000).

[32] *Caldwell*, 240 Mich App at 132.

[his friend] . . . than to return the children to their mother at that point in time. So, I think the best you've got is a question of fact. The matter will be bound over to circuit court on all charges and bond will be continued.

Because sufficient evidence existed at the preliminary examination to support a bindover, defense counsel was not ineffective for failing to move to quash the information.[33] "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile."[34] Here, the district court found that there was sufficient evidence to create a question of fact concerning whether Fonville committed the acts as charged. Therefore, Fonville's claim is without merit.

## 2. FAILURE TO ADVISE REGARDING SEX OFFENDER REGISTRATION REQUIREMENT

### a. BASIC LEGAL PRINCIPLES

"[W]hen a defendant argues ineffective assistance of counsel in the context of a guilty plea, the defendant is essentially arguing that counsel failed to provide sufficient information regarding the consequences, elements, or possible defenses of the plea."[35] And " '[t]o establish ineffective assistance of counsel in the context of a guilty plea, courts must determine whether the defendant tendered a plea voluntarily and understandingly.' "[36] "Absent sufficient information, the plea would be unknowing and, consequently, involuntary."[37] "Defense counsel's advice does not need to be correct, but it

---

[33] *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

[34] *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

[35] *People v Davidovich*, 238 Mich App 422, 427; 606 NW2d 387 (1999).

[36] *Id.* at 425, quoting *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995).

[37] *Davidovich*, 238 Mich App at 427.

must fall within the range of competence demanded of attorneys in criminal cases."[38] More specifically,

> for purposes of determining whether defense counsel was effective[,] a defendant need only be made aware of the *direct* consequences of a guilty plea. A defendant's ignorance of the *collateral* consequences of a plea does not render the plea involuntary. Counsel's failure to properly advise of collateral consequences of a plea does not bear on whether a defendant properly understood the decision to plead guilty to the charges in question.[39]

Examples of collateral or incidental consequences include the loss of employment, loss of the right to vote, loss of the right to travel freely abroad, loss of the right to a driver's license, loss of the right to possess firearms, a plea's possible enhancing effects on a subsequent sentence, institution of separate civil proceedings against the defendant for commitment to a mental-health facility, loss of good-time credit, possibility of imposition of consecutive sentences, possibility of undesirable discharge from the armed forces,[40] disqualification from public benefits, and loss of business or professional licenses.[41]

In contrast, this Court indicated in *People v Boatman* that an example of a direct consequence of a plea would be the consequence resulting from being sentenced as an habitual offender.[42] In *Boatman*, although concluding that it lacked the authority to expand the scope of

---

[38] *Id.* at 425.

[39] *Id.* at 428 (emphasis added); see also *People v Haynes*, 256 Mich App 341, 349; 664 NW2d 225 (2003) ("[C]riminal defendants may not withdraw a guilty plea on the ground that they were unaware of the future collateral or incidental effects of the initial valid plea.").

[40] *Davidovich*, 238 Mich App at 429.

[41] *Padilla v Kentucky*, 559 US ___, ___; 130 S Ct 1473, 1487; 176 L Ed 2d 284, 300 (2010) (Alito, J., concurring).

[42] *People v Boatman*, 273 Mich App 405, 409; 730 NW2d 251 (2006).

the language of MCR 6.302(B)(2)[43] to require that a trial court inform a defendant of the effect of the habitual-offender statute on the defendant's sentence, this Court nevertheless explained that "because of the existence of specific and separate guidelines applicable to the sentencing of habitual offenders, the effect of a defendant's habitual-offender status on sentencing does not comprise a 'collateral consequence.' "[44] This Court stressed that a defendant must know the most serious consequences of a guilty plea.[45] Therefore, according to this Court,

> [t]he existence of separate guidelines specified for use with habitual offenders demonstrates the necessity of informing a defendant of the use of these guidelines to ensure "understanding" of the consequences of a plea, particularly under the circumstances of this case where the difference in sentencing comprised a distinction between a misdemeanor and a felony, and a difference of 13 years in the sentence imposed.[46]

### b. THE PARTIES' ARGUMENTS

The prosecution argues that sex offender registration is a collateral consequence of a conviction and, therefore, defense counsel's failure to inform Fonville of that requirement did not render his plea defective. In mak-

---

[43] MCR 6.302(B) requires *only* that a trial court advise and determine that the defendant understands the following:

(1) the name of the offense to which the defendant is pleading; the court is not obliged to explain the elements of the offense, or possible defenses;

(2) the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law[.]

[44] *Boatman*, 273 Mich App at 409.

[45] *Id.* at 412.

[46] *Id.*

ing this argument, the prosecution relies on an unpublished decision of this Court, *In re Lyons*.[47] In *Lyons*, a panel of this Court held that a trial court's failure to inform a defendant that he would be required to register as a sex offender did not provide a basis for overturning an otherwise valid plea.[48] Specifically, the *Lyons* panel stated that "[r]egistration as a sex offender is a collateral consequence of a conviction."[49] The prosecution acknowledges that sex offender registration is a serious consequence of a guilty plea. However, the prosecution observes that other recognized consequences, like loss of the right to vote, are also serious but, nevertheless, merely incidental consequences of the guilty plea. The prosecution also notes that in *Magyar v State*, the Mississippi Supreme Court recognized that "virtually every other jurisdiction to address the question" has held that "the requirement to register as a sex offender is a collateral consequence of a guilty plea[.]"[50] In those cases, the courts reasoned that sex offender registration is a collateral consequence of a guilty plea because the registration requirement is not penal in nature and thus not part of sentencing procedures.[51]

---

[47] *In re Lyons*, unpublished memorandum opinion of the Court of Appeals, issued December 19, 2000 (Docket No. 217858).

[48] *Id.* at 1.

[49] *Id.*

[50] *Magyar v State*, 2007-CT-00740-SCT (¶ 11); 18 So 3d 807, 811-812 & n 5 (Miss, 2009) (citing cases from Alabama, Arizona, Colorado, Delaware, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Massachusetts, Missouri, Nevada, New Jersey, New Mexico, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Washington, Wisconsin, and Wyoming).

[51] See, e.g., *Robinson v State*, 730 So 2d 252, 254 (Ala Crim App, 1998) ("Registration and community notification requirements for sex offenders do not constitute punishment."); *People v Montaine*, 7 P3d 1065, 1067 (Colo App, 1999) ("Although the duty to register flows directly from

Fonville, however, argues that this Court should hold that defense counsel was required to inform him that he must register as a sex offender because that requirement was *not* a future collateral or incidental effect of the initial valid plea.[52] Rather, Fonville contends that registration as a sex offender is an immediate and absolute effect of his conviction.[53] Fonville also contends that a reasonably competent attorney in the practice of criminal law would have been aware of the requirement to register as a sex offender. And he contends that if defense counsel had informed him of the requirement, he would not have pleaded guilty to the child-enticement charge.

### c. DEFINING THE CONSEQUENCE

The salient determination comes down to whether registration as a sex offender is a direct or collateral consequence of a defendant's guilty plea.

We first note that we are not persuaded by the prosecution's reliance on *In re Lyons* or *Magyar*. *Lyons* is unpublished, offered no rationale for its conclusion, and is not binding on our decision in this case.[54] Additionally, the cases from other jurisdictions that the Mississippi Supreme Court cited in *Magyar* are also not

---

defendant's conviction as a sex offender, it does not enhance defendant's punishment for the offense."); *State v Partlow*, 840 So 2d 1040, 1043 (Fla, 2003) ("A direct consequence must affect the range of punishment in a definite, immediate, and largely automatic way. The registration requirement has absolutely no effect on the 'range of the defendant's punishment' for the crime . . . .").

[52] See *Haynes*, 256 Mich App at 349.

[53] See MCL 28.723(1)(a) (requiring that any individual convicted of a listed offense after October 1, 1995, register under SORA, MCL 28.721 *et seq.*); MCL 28.722(e)(*vii*) (listing MCL 750.350 [child enticement] as a listed offense under SORA).

[54] See MCR 7.215(C)(1).

binding on this Court. And although we recognize the rationale in those cases as persuasive, we are more persuaded by the reasoning offered by the United States Supreme Court's recent decision in *Padilla v Kentucky*.[55] The parallels with this case, although not exact, are significant.

In *Padilla*, the Supreme Court considered the question whether defense counsel has an obligation to advise a defendant that the offense to which the defendant is pleading guilty will result in the defendant's deportation from this country. The defendant argued that his defense counsel's performance was deficient because counsel erroneously advised him that he did not "have to worry" about deportation as a consequence of his guilty plea.[56] In truth, the defendant's plea to the charged offense "made his deportation virtually mandatory."[57] The Court held that a defense attorney must inform a defendant whether a plea carries a risk of deportation.[58]

In so ruling, the Supreme Court agreed with the defendant that "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation."[59] The Court reached this conclusion by first clarifying that although "deportation is a particularly severe 'penalty,' . . . it is not, in a strict sense, a criminal

---

[55] *Padilla v Kentucky*, 559 US ___; 130 S Ct 1473; 176 L Ed 2d 284 (2010).

[56] *Id.* at ___; 130 S Ct at 1478 (quotation marks and citation omitted).

[57] *Id.* at ___; 130 S Ct at 1478.

[58] *Id.* at ___; 130 S Ct at 1478.

[59] *Id.* at ___; 130 S Ct at 1478. The Court left it to the lower court to determine on remand whether the defendant could satisfy the prejudice prong of the two-pronged ineffective-assistance analysis. *Id.* at ___; 130 S Ct at 1483-1484.

sanction."[60] However, the Court went on to explain that "[a]lthough removal proceedings are civil in nature, . . . deportation is nevertheless intimately related to the criminal process." [61] The Court determined that the "nearly . . . automatic result" of removal for noncitizen offenders made it difficult "to divorce the penalty from the conviction in the deportation context."[62] Therefore, according to the Court, "[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence."[63] Accordingly, the Court concluded that "[t]he collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation."[64]

Turning to the merits of the defendant's ineffective-assistance claim, the Supreme Court noted that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation."[65] The Court added that its own

---

[60] *Id.* at ___; 130 S Ct at 1481. We note that this point is in keeping with the prevailing conclusion that the statutory mandate that a defendant register as a sex offender is not punishment, but merely a "remedial regulatory scheme furthering a legitimate state interest." *Golba*, 273 Mich App at 617; see also, e.g., *Robinson*, 730 So 2d at 254 ("Registration and community notification requirements for sex offenders do not constitute punishment."); *Montaine*, 7 P3d at 1067 ("Although the duty to register flows directly from defendant's conviction as a sex offender, it does not enhance defendant's punishment for the offense."); *Partlow*, 840 So 2d at 1043 ("A direct consequence must affect the range of punishment in a definite, immediate, and largely automatic way. The registration requirement has absolutely no effect on the range of the defendant's punishment for the crime . . . .").

[61] *Padilla*, 559 US at ___; 130 S Ct at 1481.

[62] *Id.* at ___; 130 S Ct at 1481.

[63] *Id.* at ___; 130 S Ct at 1482.

[64] *Id.* at ___; 130 S Ct at 1482.

[65] *Id.* at ___; 130 S Ct at 1482.

precedent had also recognized the importance of depor-
tation to a defendant's plea decision.[66] The Court then
explained that when, as in *Padilla*, "the terms of the
relevant immigration statute are succinct, clear, and
explicit in defining the removal consequence" for the
defendant's conviction, defense counsel's "duty to give
correct advice is . . . clear."[67] The Court further noted,
however, that even if the statute is not as clear, the
"[l]ack of clarity in the law . . . does not obviate the need
for counsel to say something about the possibility of
deportation . . . ."[68]

We recognize a significant parallel to be drawn from
the Supreme Court's rationale in *Padilla* to the circum-
stances of this case. Similar to the risk of deportation,
sex offender registration "as a consequence of a crimi-
nal conviction is, because of its close connection to the
criminal process, . . . difficult to classify as either a
direct or a collateral consequence" and that therefore
"[t]he collateral versus direct distinction is . . . ill-suited
to evaluat[e] a *Strickland* claim" concerning the sex-
offender-registration requirement.[69]

Like the consequence of deportation, sex offender
registration is not a criminal sanction, but it is a
particularly severe penalty.[70] In addition to the typical
stigma that convicted criminals are subject to upon
release from imprisonment, sexual offenders are sub-
ject to unique ramifications, including, for example,
residency-reporting requirements[71] and place-of-domicile

---

[66] *Id.* at ___; 130 S Ct at 1483, citing *Immigration & Naturalization
Serv v St Cyr*, 533 US 289, 323; 121 S Ct 2271; 150 L Ed 2d 347 (2001).

[67] *Padilla*, 559 US at ___; 130 S Ct at 1483.

[68] *Id.* at ___n 10; 130 S Ct at 1483 n 10.

[69] *Id.* at ___; 130 S Ct at 1482.

[70] See *id.* at ___; 130 S Ct at 1481.

[71] MCL 28.724a; MCL 28.725; MCL 28.725a.

restrictions.[72] Moreover, sex offender registration is "intimately related to the criminal process."[73] The "automatic result" of sex offender registration for certain defendants makes it difficult "to divorce the penalty from the conviction . . . ."[74]

Further, when, as here, the sex-offender-registration statute is "succinct, clear, and explicit" in defining the registration requirement for the defendant's conviction, defense counsel's duty to give correct advice is likewise clear.[75] Thus, we conclude that applying the *Padilla* rationale to this case supports a holding that defense counsel must advise a defendant that registration as a sexual offender is a consequence of the defendant's guilty plea.[76] The failure to inform a pleading defendant that the plea will necessarily require registration as a sex offender affects whether the plea was knowingly made.

In reaching our conclusion in this case, we recognize that this Court held in *People v Davidovich* that the possibility that a defendant would be deported was a collateral, rather than a direct, consequence of his sentence.[77] However, that holding does not directly bear on this case because that case was limited to its facts. And although the *Padilla* holding directly contradicts the *Davidovich* ruling, this is not a deportation case. We rely on *Padilla* simply for the logic of its rationale, not

---

[72] MCL 28.735.

[73] See *Padilla*, 559 US at ___; 130 S Ct at 1481.

[74] See *id.* at ___; 130 S Ct at 1481.

[75] See *id.* at ___; 130 S Ct at 1483.

[76] Accord *Taylor v State*, 304 Ga App 878, 882-883; 698 SE2d 384 (2010) (post-*Padilla* case, holding that the failure of trial counsel to advise his client that his guilty plea to a charge of child molestation would require that he comply with Georgia's sex-offender-registration requirement constituted deficient performance).

[77] *Davidovich*, 238 Mich App at 427-428 & n 4.

its ultimate disposition. We also recognize the *Davidovich* Court's concern that "[a]llowing defendants to withdraw their pleas once they discover that their conviction subjects them to deportation would open the door for defendants to withdraw their pleas for other collateral reasons."[78] However, while the *Padilla* decision has provided us with the key to open the door to allow defendants to withdraw their pleas for failure to be informed of the sex-offender-registration requirement, we do not see our decision as opening the floodgates to withdrawal-of-plea motions for other collateral reasons. Our decision is limited to distinguishing the unique and mandatory nature of the specific consequence of the sex-offender-registration requirement from the common, potential, and incidental consequences associated with criminal convictions.[79]

Additionally, we note that the prosecution argues that *Padilla* is not applicable to this case because the Supreme Court's decision in that case does not apply retroactively. However, as stated, we are not applying the *Padilla* decision to dictate the result in this case. Rather, we are simply borrowing the logic of its rationale. Moreover, we are mindful that concerns for finality caution that the validity of guilty pleas not be called into question when entered under the law applicable on the day the plea is taken.[80] However, the sex-offender-registration requirement was on the books at the time of Fonville's plea.[81] And more importantly, Fonville has shown "serious derelictions on the part of counsel

[78] *Id.* at 428.

[79] See *Padilla*, 559 US at ___; 130 S Ct at 1482 (referring to the unique and specific risk of deportation).

[80] *People v Osaghae (On Reconsideration)*, 460 Mich 529, 534; 596 NW2d 911 (1999).

[81] See *id.* at 533.

sufficient to show that his plea was not, after all, a knowing and intelligent act."[82]

F. APPLICATION TO FONVILLE

The sex-offender-registration statute is "succinct, clear, and explicit" in defining the registration requirement for Fonville's conviction of child enticement. Therefore, to have satisfied his duty to act as constitutionally competent counsel, Fonville's defense attorney owed a duty to clearly advise Fonville that his plea to the charge of child enticement would require that he register as a sex offender.[83]

Moreover, we also conclude that defense counsel's failure to inform Fonville that his plea would require registration as a sex offender affected whether his plea was knowingly made. This failure, therefore, prejudiced Fonville to the extent that, but for counsel's error, the result of the proceeding would have been different. Fonville repeatedly informed the trial court that he would not have pleaded guilty of child enticement if he had known that he would also be required to register as a sex offender. And although the registration requirement does not constitute cruel and unusual punishment in the context of this charge, we do believe that, given the lack of any sexual component to Fonville's conduct, it was all the more imperative that his counsel advise him of the unique registration consequences of his plea.

III. CONCLUSION

In sum, we conclude that Fonville is not allowed to withdraw his plea to the charge of child enticement because there was a sufficient factual basis on the

---

[82] *Id.* at 534 (quotation marks and citation omitted).

[83] See *Padilla*, 559 US at ___; 130 S Ct at 1483.

record to support his conviction. Likewise, we conclude that defense counsel was not ineffective for failing to move to quash the information. We also conclude that the requirement that defendant register as a sex offender does not amount to cruel and unusual punishment.

However, we conclude that defense counsel's performance was constitutionally defective when he failed to inform Fonville of the sex-offender-registration requirement. And we conclude that this failure prejudiced Fonville.

Accordingly, we reverse and remand for further proceedings. We do not retain jurisdiction.

FORT HOOD, P.J., concurred.

JANSEN, J. (*concurring in part and dissenting in part*). I fully concur with the majority's determination that defendant's attorney rendered ineffective assistance of counsel by failing to inform defendant that his guilty plea would require him to register as a sex offender. The majority correctly concludes that, like the consequence of deportation at issue in *Padilla v Kentucky*, 559 US ___; 130 S Ct 1473; 176 L Ed 2d 284 (2010), the requirement to register as a sex offender is a serious consequence of which a defense attorney must inform a client who wishes to plead guilty of certain offenses.

I respectfully dissent, however, from the majority's determination that there was a sufficient factual basis to support defendant's guilty plea in this case. Defendant pleaded guilty of enticing a child in violation of MCL 750.350(1), which provides:

> A person shall not maliciously, forcibly, or fraudulently lead, take, carry away, decoy, or entice away, any child under the age of 14 years, with the intent to detain or

conceal the child from the child's parent or legal guardian, or from the person or persons who have adopted the child, or from any other person having the lawful charge of the child. A person who violates this section is guilty of a felony, punishable by imprisonment for life or any term of years.

As noted by the majority, defendant informed the circuit court during the plea proceeding that he "pretty much endangered two young kids" by "doing drugs and driving around with [the children] in the car." Defendant admitted that he was supposed to return the children to their mother at 11:00 p.m., but he "ended up because of getting crack and everything keeping the kids with [him], driving around from 11 p.m. at night through 2 p.m. in the afternoon the next day[.]" The circuit court determined that these statements provided a sufficient factual basis for defendant's guilty plea. I cannot agree.

Before accepting a defendant's plea of guilty, the circuit court must establish a factual basis for the plea. MCR 6.302(D)(1); *People v Carlisle*, 387 Mich 269, 273; 195 NW2d 851 (1972). A factual basis exists for a defendant's guilty plea if "the factfinder could properly convict on the facts elicited from the defendant at the plea proceeding," *People v Brownfield (After Remand)*, 216 Mich App 429, 431; 548 NW2d 248 (1996), or if "an inculpatory inference can reasonably be drawn by a jury from the facts admitted by the defendant even if an exculpatory inference could also be drawn and defendant asserts the latter is the correct inference," *Guilty Plea Cases*, 395 Mich 96, 130; 235 NW2d 132 (1975).

I cannot conclude that the colloquy at the plea proceeding provided a sufficient factual basis for defendant's plea of guilty to the charge of child enticement. The offense of child enticement is a specific-intent crime. MCL 750.350(1); *People v Kuchar*, 225 Mich App

74, 77; 569 NW2d 920 (1997). The intent to detain or conceal a child from his or her parent is an essential element of the offense. *People v Rollins*, 207 Mich App 465, 469; 525 NW2d 484 (1994). I perceive absolutely no evidence on the record to establish that defendant acted with the requisite specific intent to detain or conceal the children from their mother. Indeed, the children's mother entrusted the children to defendant's care in the first instance. I acknowledge that defendant drove around Oakland County for hours looking for drugs with the children in the backseat of his vehicle. But the children were likely the furthest thing from his mind during this period. It appears that defendant had only one true intention while driving in his vehicle—namely, the intent to locate drugs. No rational trier of fact would believe that defendant's actual intention while he drove throughout Oakland County was to conceal or detain the children from their mother.

It strikes me that defendant's failure to return the children to their mother on time resulted more from his negligence or drug-induced absentmindedness than from any criminal intent to conceal or detain the children. While defendant's act of searching for drugs was not laudable by any means, there is no evidence to suggest that he acted with the specific intent "to detain or conceal the child[ren] from the child[ren]'s parent or legal guardian . . . ." MCL 750.350(1). Given the testimony adduced at the plea proceeding and the other evidence presented in this case, no reasonable finder of fact could conclude beyond a reasonable doubt that defendant acted with the specific intent to detain or conceal the children from their mother. *Brownfield*, 216 Mich App at 431.

I do not believe that there was a sufficient factual basis for defendant's guilty plea, see MCR 6.302(D)(1),

and I therefore conclude that the circuit court erred by accepting the plea, see MCR 6.302(A). I would remand with instructions to the circuit court to permit defendant to withdraw his plea. In all other respects, I concur with the majority's opinion.