*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CLYDE RICHARD GREEN,

Defendant-Appellant.

UNPUBLISHED
April 9, 2020

No. 338712
Iosco Circuit Court
LC No. 13-008088-FH

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's denial of his motion to withdraw his no contest plea to attempted animal abandonment or cruelty, second offense, MCL 750.50(4)(a); MCL 750.50(4)(c); MCL 750.92(3), and violation of the bodies of dead animals act, third or subsequent offense, MCL 287.679(1); MCL 287.679(2), based on ineffective assistance of counsel. Defendant was sentenced to serve two years of probation for both convictions. This matter is before this Court on remand from the Michigan Supreme Court "for consideration, as on leave granted, of whether the defendant was denied the effective assistance of counsel by counsel's failure to advise the defendant that the offense to which he was pleading no contest was a felony." *People v Green*, 503 Mich 921, 921 (2018). We vacate and remand.

## I. FACTS AND PROCEDURAL HISTORY

Defendant pleaded no contest to one count of attempted animal abandonment or cruelty, second offense, and one count of violating the bodies of dead animals act, third or subsequent offense. In exchange, the prosecutor dismissed several other charges against defendant including a second-offense habitual-offender notice, and related charges against defendant's wife. Defendant's plea was tendered with a sentence agreement that defendant would not receive any term of incarceration. At the plea hearing, the court made a record of the maximum penalties for the defendant's charges which were incarceration for up to one year for each of the counts and a

---

[1] *People v Green*, 503 Mich 921 (2018).

-1-

litany of other penalties including fines, community service and restriction on animal ownership. The word "felony" was not used in the extensive recitation.

Prior to sentencing, defendant moved to withdraw his plea on the basis that the court failed to inform him that he was pleading to a felony instead of a misdemeanor offense. At sentencing, defendant's trial counsel stated he had reviewed the plea transcript and agreed that while the penalty for each charge was placed on the record, there was no mention of whether one was a felony or a misdemeanor. Counsel acknowledged that he thought the charges at issue were misdemeanors. The trial court denied defendant's motion. The court first noted that it had no affirmative duty to inform the defendant that the charges were felonies. The court noted that both the defendant and his attorney had the mistaken understanding that the charge for which the no-contest plea was entered was a misdemeanor. After this initial denial, the defendant renewed his request to withdraw his plea after sentencing asserting ineffective assistance of counsel. This motion was also denied with the court finding that counsel was not ineffective because despite his erroneous belief that the plea was to a misdemeanor, counsel had achieved a significant benefit for the defendant in the dismissal of the other charges against him and his wife with no jail time.

Defendant filed a delayed application for leave to appeal in this Court that was denied for lack of merit in the grounds presented. *People v Green*, unpublished order of the Court of Appeals, entered July 25, 2017 (Docket No. 338712). Defendant then filed an application for leave to appeal to the Michigan Supreme Court, which remanded the matter to this Court for consideration as on leave granted. *People v Green*, 503 Mich 921 (2018).

## II. STANDARD OF REVIEW

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011) (citation omitted). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Clear error exists where the reviewing court is left with a definite and firm conviction that the lower court made a mistake. *Armstrong*, 490 Mich at 289.

## III. ANALYSIS

Defendant argues that his plea was involuntary because he received ineffective assistance of counsel when defense counsel failed to inform him that one of the charges to which he pled no contest was a felony.[2] We agree.

---

[2] See MCL 287.679(2) ("A person who is convicted of violating this act or a rule promulgated under this act 3 or more times is guilty of a felony punishable by imprisonment for not more than 1 year or a fine of not more than $2,000.00, or both.").

"Both the United States and the Michigan Constitutions guarantee a defendant the right to counsel. US Const, Am VI; Const 1963, art 1, § 20." *People v Meissner*, 294 Mich App 438, 459; 812 NW2d 37 (2011). The right to counsel includes the right to the effective assistance of counsel, *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), and extends to the plea-bargaining process, *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012).

The Supreme Court set out the standard for ineffective assistance of counsel claims in *Strickland v Washington*, 466 US 688, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In *Strickland*, 466 US at 687, the Supreme Court held that a conviction could be reversed for ineffective assistance of counsel if defense counsel was "deficient" and defense counsel's defective actions prejudiced the defendant. To prove ineffective assistance of counsel, defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A claim of ineffective assistance of counsel may be based on counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer." *People v Douglas*, 296 Mich App 186, 205; 817 NW2d 640 (2012), aff'd in part, rev'd in part 496 Mich 557; 852 NW2d 587 (2014). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 US at 163. "The test is whether the attorney's assistance enabled the defendant to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). "In order to satisfy the second, or 'prejudice,' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v Lockhart*, 474 US 52, 59; 106 S Ct 366; 88 L Ed 2d 203 (1985).

Defendant appeals the trial court's order denying his motion to withdraw his plea after sentencing. "Guilty- and no-contest-plea proceedings are governed by MCR 6.302." *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). MCR 6.310(C) governs plea withdrawal after sentencing. MCR 6.310(C)(4) instructs the trial court to allow withdrawal if it "determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside. . . ." "The failure to accurately inform a defendant of the consequences of his or her plea can lead to a defect in the plea-taking process because the defendant may not have been capable of making an understanding plea." *People v Coleman*, 327 Mich App 430, 443; 937 NW2d 372 (2019). "The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." MCR 6.302. "Guilty pleas have been found to be involuntary or unknowing on the basis of ineffective assistance of counsel where defense counsel failed to explain adequately the nature of the charges or the consequences of the guilty plea." *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995) citing *People v Thew*, 201 Mich App 78, 91; 506 NW2d 547 (1993).

In *Brady v United States*, the United States Supreme Court stated that a defendant entering a plea must be "fully aware of the direct consequences" of the plea. 397 US 742, 755; 90 S Ct 1463; 25 L Ed 2d 747 (1970) (citation and quotation marks omitted). Since *Brady*, a distinction developed between the meaning of "direct consequences" and "collateral consequences." Until the Supreme Court's decision in *Padilla v Kentucky*, "the longstanding and unanimous position of the federal courts was that reasonable defense counsel generally need only advise a client about

the direct consequences of a criminal conviction." 559 US 356, 375-376; 130 S Ct 1473; 176 L Ed 2d 284 (2010) (ALITO, J. concurring in judgment). *Padilla* held that the Sixth Amendment also required an attorney for a criminal defendant to provide advice about the risk of deportation, a non-criminal consequence, arising from a guilty plea. *Chaidez v United States*, 568 US 342, 344, 354; 133 S Ct 1103, 1105; 185 L Ed 2d 149 (2013). The *Padilla* Court reached this holding without determining whether deportation was a direct or collateral consequence of a criminal conviction, but rather finding the distinction "ill suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Padilla*, 559 US at 366. Importantly, the Court clarified that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*, 466 U.S., at 689, 104 S.Ct. 2052." *Padilla*, 559 US at 365. As explained by the Supreme Court in *Chaidez*:

> . . .*Padilla* did something more. Before deciding if failing to provide such advice "fell below an objective standard of reasonableness," *Padilla* considered a threshold question: Was advice about deportation "categorically removed" from the scope of the Sixth Amendment right to counsel because it involved only a "collateral consequence" of a conviction, rather than a component of the criminal sentence? 559 U.S., at ——, 130 S.Ct., at 1482. In other words, prior to asking how the *Strickland* test applied ("Did this attorney act unreasonably?"), *Padilla* asked whether the *Strickland* test applied ("Should we even evaluate if this attorney acted unreasonably?"). [*Chaidez*, 568 US at 349].

In other words, *Padilla* asked whether there are some issues that are taken out of the purview of direct or collateral consequences, and instead considered initially for their worth in the category of advice expected of counsel provided by the Sixth Amendment. See *Chaidez*, 568 US at 355 ("Our first order of business was thus to consider whether the widely accepted distinction between direct and collateral consequences categorically foreclosed Padilla's claim, whatever the level of his attorney's performance."). In making this finding in the context of deportation, the *Padilla* Court "relied on the special nature of deportation—the severity of the penalty and the automatic way it follows from conviction." *Id.* (Quotation marks and citation omitted). It also considered deportation's "close connection to the criminal process," finding it " 'most difficult' to divorce the penalty from the conviction in the deportation context." *Padilla*, 559 US at 366 (citation omitted). Having found that advice regarding deportation was within the ambit of the Sixth Amendment right to counsel, the Court applied *Strickland* to Padilla's claim. The Court held that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id*. at 367. In Padilla's case, the Court considered how easily counsel could have determined the consequences of Padilla's plea by just reading the removal statute, and held that where the law stating the consequence was "succinct," "straight forward" and "truly clear," "the duty to give correct advice [was] equally clear." *Id*. at 369.

Incorporating the post-*Padilla* analytical framework into Michigan jurisprudence, our Supreme Court noted, "While courts have relied on different tests to distinguish direct from collateral consequences, the prevailing distinction relied on by a majority of courts turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *People v Cole*, 491 Mich 325, 333-334; 817 NW2d 497 (2012).

Relying on the logic in *Padilla*, the Court in *People v Fonville*, held, "that defense counsel must advise a defendant that registration as a sexual offender is a consequence of the defendant's guilty plea" and that "[t]he failure to inform a pleading defendant that the plea will necessarily require registration as a sex offender affects whether the plea was knowingly made." *Fonville*, 291 Mich App 363, 392; 804 NW2d 878 (2011). In *Fonville*, the defendant sought to withdraw his guilty plea to one count child enticement claiming that counsel failed to inform him that the plea included registering as a sex offender. Like in *Padilla*, the Court in *Fonville*, found the direct versus collateral distinction ill-suited to classify the consequence; thereby making the discussion of collateral consequences in *Fonville* obiter dicta. See *Id*. at 393 ("Our decision is limited to distinguishing the unique and mandatory nature of the specific consequence of the sex-offender-registration requirement from the common, potential, and incidental consequences associated with criminal convictions."). The Court reasoned that while sex offender registration was not a criminal sanction, it was a severe penalty given the stigma and domicile restrictions associated with registering. It further found registration was "intimately related to the criminal process" because of its "automatic result" for certain defendants. *Id*. at 391-392. In the context of Fonville's *Strickland* claim, the Court held that counsel's duty to provide correct advice about the registration requirement was clear when the sex-offender-registration statute was "succinct, clear, and explicit," and in existence at the time of Fonville's plea. *Id*. at 392

In the instant matter of defendant's plea, counsel did not dispute that he failed to tell defendant that a conviction for a violation of the bodies of dead animals act was a one-year felony instead of a misdemeanor offense. In his affidavit attached to his motion to withdraw his plea, defendant averred that he would not have accepted the plea agreement with the knowledge that he was pleading no contest to a felony. Defendant argues that although he was previously found guilty of a felony involving the maltreatment of animals in Lapeer County, that fact did not absolve counsel of the obligation to properly advise defendant of the nature of the charges. Defendant contends that the distinction between a misdemeanor and felony offense is significant because a conviction for an additional felony carries with it collateral consequences such as being a habitual offender that are not involved when pleading to a misdemeanor.

We agree with the trial court that despite defense counsel's erroneous advice regarding the felonious nature of the plea, counsel achieved a good result for the defendant. However, our analysis cannot *focus on that fact alone*. The lay defendant also looks to counsel to provide him with accurate information upon which to rely in deciding how to plead where the consequences arising from a felony criminal conviction are inevitable and automatic. Justice Alito, in his concurrence in *Padilla*, acknowledged, "criminal convictions can carry a wide variety of consequences other than conviction and sentencing, including civil commitment, civil forfeiture, the loss of the right to vote, disqualification from public benefits, ineligibility to possess firearms, dishonorable discharge from the Armed Forces, and loss of business or professional licenses." *Padilla*, 559 US at 376 (ALITO, J. concurring in judgment). While a misdemeanor does not deprive a person in Michigan of the right to vote, a felony with a term of incarceration does during the period of confinement. A convicted felon is also barred from jury service. The defendant in this case already had a felony conviction prior to his plea but even then, he faced additional direct and automatic consequences with an additional felony. By way of example, a convicted felon may not possess a firearm for three years post-conviction. See MCL750.224f(1). A defendant should not be left to discern the consequences of a plea without assistance.

We also conclude that counsel could have easily determined from reading the statute that defendant was charged with a felony. MCL 287.679(2) plainly states that "[a] person who is convicted of violating this act or a rule promulgated under this act 3 or more times is guilty of a felony punishable by imprisonment for not more than 1 year or a fine of not more than $2,000.00, or both." We see no reason, under prevailing professional norms, for counsel to have omitted from his advice to defendant during plea negotiations the fact that MCL 287.679 was a felony offense. Counsel's performance was deficient in this regard. Consequently, defendant's plea was unknowing where the full nature of the charges and the consequences of the guilty plea were not explained to him. The advice given affected defendant's decision either to plead or go to trial.

We acknowledge that if defendant withdraws his plea, he exposes himself to significant jeopardy. However, just as post-*Lockridge*[3] defendants have been given the opportunity to seek review of their sentences and the possibility of imposition of a longer sentence on review, this defendant is entitled to exercise his free will and rely on his constitutional rights to enter a knowing and intelligent plea.

Accordingly, we vacate the circuit court's order denying defendant's motion to withdraw his plea, and defendant's sentence. We remand to the trial court with instructions to allow defendant to withdraw his no contest plea. If defendant withdraws the plea, the prosecutor may reinstitute all charges. We do not retain jurisdiction.

Vacated and remanded.


/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause

---

[3]*People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).