*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

HOWARD JUNIOR BEACHAM also known as
HOWARD JUNIOR BEACHUM,

      Defendant-Appellant.

UNPUBLISHED
December 22, 2022

No. 358521
Muskegon Circuit Court
LC No. 19-003848-FH

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Howard Junior Beacham appeals as of right his conviction by a jury of one count of possession of a controlled substance in an amount more than 50 grams but less than 450 grams, MCL 333.7403(2)(a)(*iii*), second offense, MCL 333.7413(2). Beacham was sentenced to serve 12 to 35 years' imprisonment.[1] On appeal, Beacham argues trial counsel was ineffective and the trial court refused to recognize a material breakdown in the attorney client relationship. He further argues (1) the trial court erred by failing to hold an evidentiary hearing, under *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978), to test the sufficiency of the warrant affidavit, (2) the verdict was tainted by the jury's racial composition, and (3) the prosecution failed to provide sufficient notice of its intent to pursue the lesser charge of possession of a controlled substance.

For the reasons set forth in this opinion, we affirm Beacham's conviction and sentences, but we remand to allow the trial court to perform the ministerial task of correcting a clerical error in the judgment of sentence.

---

[1] The August 4, 2021 judgment erroneously reflects that Beacham was sentenced as a fourth-offense habitual offender under MCL 769.12. But the record reflects that his sentence was enhanced under MCL 333.7413(2), and there was no habitual enhancement.

## I. BACKGROUND

In May 2019, members of the West Michigan Enforcement Team (WEMET)[2] executed a search warrant at a Muskegon residence. Once inside the residence, the officers encountered Beacham. Beacham attempted to flee, and was taken to the ground after refusing to comply with commands. Beacham stated that he had "dope" in his hand, and set a clear, plastic bag containing a white powdery substance on the ground. The contents of the bag weighed just over 61grams and were identified as cocaine. A second, smaller bag weighing 4.6 grams was also recovered. The officers searched the home, seizing digital scales, multiple boxes of clear plastic sandwich baggies, and $733 in U.S. currency. The home was equipped with multiple interior and exterior security cameras, a live-feed display, and a digital recording system.

Beacham was charged with one count of delivery/manufacture of a controlled substance in an amount more than 50 grams and less than 450 grams, MCL 333.7401(2)(a)(*iii*). At trial, the jury was instructed on the elements of possession with intent to deliver, as well as the lesser included offense of possession in an amount over 50 grams and less than 450 grams. The jury found Beacham guilty of the lesser offense of simple possession, and this appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Beacham argues he is entitled to a reversal of his conviction and a new trial because he did not receive effective assistance of counsel. We disagree.

Claims of ineffective assistance of counsel present mixed questions of fact and constitutional law. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review factual findings for clear error, while the constitutional issue is reviewed de novo. *Id*. Because Beacham failed to move for a new trial or a *Ginther*[3] hearing, our review is limited to mistakes that are apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Because counsel is afforded wide discretion in matters of trial strategy, a defendant must overcome a strong presumption that he was represented competently. *Unger*, 278 Mich App at 242.

Beacham focuses his argument on the breakdown of the attorney-client relationship that prompted defense counsel to make a record of the discord on first day of trial. Beacham contends that he demonstrated good cause to entitle him to substitute counsel. Beacham's constitutional guarantee to the right to counsel, US Const, Am VI; Const 1963, art 1, § 20, includes a right to

---

[2] WEMET is a multi-jurisdictional task force team of detectives from Muskegon County police agencies.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

effective assistance of counsel, *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052, 80 L Ed2d 674 (1984), as well as the right to counsel of choice, *United States v Gonzalez-Lopez*, 548 US 140, 146; 126 S Ct 2557; 165 L Ed 2d 409 (2006). "A choice-of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied." *Gonzalez-Lopez*, 548 US at 150 (emphasis in original). Erroneous deprivation of the right to choose one's counsel is structural error, necessitating a new trial. *Id*.

But "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v Slappy*, 461 US 1, 11; 103 S Ct 1610; 75 L Ed 2d 610 (1983). A trial court is afforded broad discretion in its decision whether to grant a continuance; "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Id*. at 11-12. A trial court is afforded "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez–Lopez*, 548 US at 151–152 (citation omitted). "A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated." *People v Krysztopaniec*, 170 Mich App 588, 598; 429 NW2d 828 (1988).

In this case, Beacham was initially represented by retained counsel,[4] who withdrew for personal reasons. After a brief period of self-representation, Beacham retained Maynard Law Associates, PLLC[5] on March 25, 2020. Two weeks before the June 29, 2021 trial date, defense counsel requested an adjournment because he and Beacham were not able to agree on a trial strategy. The trial court denied the oral motion, stating that Beacham's case was one of the oldest on the court's docket. On the first day of trial, defense counsel expressed that there had been a breakdown in the attorney-client relationship regarding defense strategy, but he affirmed that he was willing to represent Beacham at trial. The trial court specifically inquired whether Beacham wanted Mr. Carlson to continue as his counsel, or if he wished to represent himself. Beacham cited disagreements with defense strategy, but he did not clearly or unequivocally express that he wanted to discharge Maynard Law, retain new counsel, or represent himself. Given the age of the case and the fact that there had been five or six trial dates previously scheduled, the trial court held that "discharging Mr. Carlson now and allowing Mr. Beacham to shift gears and represent himself would not comply with the law. It would . . . disrupt the court's business."

After the jury was selected, the trial court conducted a conference in chambers with the prosecutor, defense counsel, and attorney Harold Emelander. According to the record, the parties discussed that Beacham did not want Maynard Law to continue to represent him, and he had approached Emelander a few days earlier to represent him. Emelander stated that Beacham discussed that Beacham would attempt to secure an adjournment, but Emelander had not been

---

[4] This case was initially bundled with a case arising out of 2016 drug charges. In that case, defendant was represented by a public defender, then two separate retained counsel.

[5] Attorneys Jeffery Maynard and Seth Carlson of Maynard Law Associates, PLLC both appeared on behalf of defendant.

formally retained. When the trial court denied the adjournment request, Beacham's sister approached Emelander, who happened to be in the courthouse on another matter. Emelander told the trial court that he was unwilling to represent Beacham if the proceedings were not adjourned because it would be "a significant disservice to [Beacham] to step in at this point to conduct a jury trial today when the jury has already been selected." The trial court permitted Emelander to substitute as defense counsel, but it refused to adjourn the proceedings.[6] Because the trial court denied the adjournment, Emelander did not substitute as defense counsel.

The record reflects that Beacham was given ample notice that the trial was set for June 29, 2021. Many of Beacham's complaints about Maynard Law's defense tactics pertained to pretrial matters that arose long before the start of trial. The record further reflects that Beacham and his attorney disagreed about trial strategy weeks before trial began. But Beacham did not use due diligence to discharge Maynard Law, retain substitute counsel, or seek to represent himself. In fact, Emelander's potential substitution as defense counsel was not brought up by Beacham until *after* a jury was selected, despite the trial court's direct inquiry of Beacham before the jury was selected. The trial court authorized Emelander to substitute as counsel, but Emelander declined to do so without an adjournment. And when Carlson complained that Beacham did not want him to represent him, Beacham denied that statement:

> *Mr. Carlson*. I would indicate, Your Honor, I don't believe that [the potential witnesses are] going to cooperate with me whatsoever. I don't think the family's going to cooperate and I don't think Mr. Beacham's going to cooperate. I know the Court has heard this all morning, but they're—I don't know that I'm able to represent Mr. Beacham with the way things are going at this point. He is not— He does not want me to represent him and he's not cooperating with me. I don't know that I can protect his rights, given the situation in this case.

> *The Court*. So what are you asking me to do?

---

[6] Beacham's statement of questions presented does not identify the trial court's denial of the request for an adjournment as an issue on appeal. We would generally consider this omission as a waiver of the issue. See *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011); see also MCR 7.212(C)(5) (stating that an appellant's brief must contain "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal."). Because the right to assistance of counsel is an important constitutional right, we review this issue to determine whether the trial court's denial of an adjournment was an abuse of discretion that deprived Beacham the right to counsel of his choice. *People v Echavarria*, 233 Mich App 356, 368; 592 NW2d 737 (1999). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). A defendant must show good cause and diligence to warrant an adjournment. *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). " 'Good cause' factors include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Id*. (quotation marks and citations omitted). Even if good cause and due diligence are shown, a defendant must demonstrate prejudice to establish grounds for reversal. *Id*. at 18-19.

*Mr. Carlson.* Your Honor, I know that the Court had—that Mr. Beacham had indicated he was hiring—wanted to hire another attorney. I would ask for an adjournment. I don't make that request lightly, especially given this morning, but the entire family is not—aside from one witness, they're not willing to work with me, and that's primarily, I believe, on Mr. Beacham's orders is that he does not want me to work for them and represent him.

*Mr. Beacham.* I didn't say that.

\* \* \*

*Mr. Carlson*: I think he needs some time to get the counsel that will—that he'll actually be able to corporate [sic] with. And Your Honor, that's—Again, I had to make a final request before we bring the jury back in.

But the trial court declined to delay the proceedings, making the following observations:

I've had a chance to see Mr. Beacham here in the front of the courtroom as the trial goes along. During jury selection, he has pretty much had his back to his attorney. He was facing the front of the room. He—At the beginning of the case, after I had said to Mr. Carlson that he could have a chance to introduce himself and his client for the jurors, Mr. Beacham sat almost in the same position. He didn't have quite his back to the jurors, but he remained seated. He didn't turn around. He didn't try to stand up. He made no effort to interact with the jurors to the extent that that is possible.

So at this point, the only real conclusion the Court can reach is that Mr. Beacham and I guess his family are willfully creating a circumstance where they hope they wouldn't secure a jury. So under those circumstances, the Court's denying the adjournment because the family and Mr. Beacham seem to be willfully creating or sabotaging the trial.

Mr. Beacham is clearly entitled to the effective assistance of counsel. But I've had other cases before with contentious attorney-client relationships and we've gone to trial and the court of appeals will have to evaluate whether that trial performance was effective or not. So the request to adjourn the trial is . . .denied . . . .

[T]he Court's also incorporating comments its [sic] made earlier today. The Court's ruling is a cumulative one, which considers the number of trial dates, the number of attorneys who have worked on these matters, et cetera.

So thank you, Mr. Carlson, for doing these things, but trial will continue.

Following the trial court's ruling, Beacham asserted that he had been fighting for over five years, but none of his attorneys would file the pretrial motions that he wanted filed. Beacham conceded that he had been represented by *five* different attorneys, but argued that none of them were court-appointed. And he was doubtful that he could retain another attorney. He then

expressed his dissatisfaction with the absence of any African-American jurors, and suggested that a bench trial would be preferable:

> So at this point, I don't even feel that I'm getting a jury of my peers because all I have is an all white jury. So how can you tell me that I'm the one that's trying to hinder the case or whatever? I'm not trying to hinder no case. I have no problem going to court or going to trial on my case. That's all I ask for from day one is a trial of my peers. At no time have I said I'm scared to go to trial.

> \* \* \* \*

> All I have to say, Your Honor, is at this point, I don't even feel the jury trial is gonna do me any good—

> \* \* \*

> so I would rather just go to bench trial. If I'm gonna get—I just might as well go with a bench trial, because I am not getting a fair jury trial anyway, so I might as well go with a bench trial.

But after discussing the matter further with defense counsel, Beacham elected to proceed with a jury trial.

The record does not support that Beacham was denied effective assistance of counsel due to the alleged breakdown of the attorney-client relationship. Despite having over three months' notice of the trial date, there was no evidence that Beacham timely and diligently searched for substitute counsel. While Beacham expressed his frustration that Maynard Law refused to file certain motions that he deemed necessary to his defense, he acknowledged that all of his prior attorneys had also refused to file the motions. There was no evidence that an adjournment would have altered that trial strategy. And the record suggests that Beacham's belated request for an adjournment was not made in good faith, but was a transparent ploy to secure a new jury because he was dissatisfied with the racial composition of the pool of potential jurors and the jurors that were ultimately seated. Beacham engaged in behavior that the trail court interpreted as a willful attempt to sabotage the trial. Given Beacham's apparent gamesmanship, we conclude that Beacham was not denied the right to counsel of his choice, and thus the trial court did not abuse its discretion by denying the adjournment request.

Beacham also asserts that defense counsel's representation was deficient because he (1) failed or otherwise refused to interview key witnesses, including Beacham's family,[7] (2) "failed to

---

[7] A failure to adequately investigate constitutes ineffective assistance of counsel only if it undermines confidence in the trial's outcome. *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Beacham has not provided any information about the identity of these witnesses, or the information these witnesses would have provided. We further note that the record reflects that defense counsel attempted to interview at least two witnesses, but they refused to speak to him.

obtain discoverable information concerning statements obtained from the confidential informant presented by [the prosecution] in support of their search warrant request,"[8] and (3) failed to call any witnesses on Beacham's behalf.[9] Because Beacham has not articulated any specific information or analysis for these alleged "deficiencies," we cannot conclude that the conduct fell below an objective standard of reasonableness.[10]

Finally, Beacham argues that defense counsel was deficient because he failed to "make appropriate requests for a *Franks* hearing." As we discuss in subsection III of this opinion, a *Franks* hearing was not warranted. Defense counsel is not required to advocate for a meritless position. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

## III. *FRANKS* HEARING

Next, Beacham argues that the trial court erred by not conducting a *Franks* hearing. We disagree.

On the first day of trial, Beacham complained that his attorney refused to request a *Franks* hearing to test the sufficiency of the search warrant affidavit. Under *Franks*, a defendant is constitutionally entitled to an evidentiary hearing to attack the veracity of a search warrant affidavit when the defendant offers a substantial preliminary showing that the affiant allegedly acted with deliberate falsehood or with reckless disregard for the truth. A trial court's decision whether to hold a *Franks* hearing is discretionary. *People v Martin*, 271 Mich App 280, 309; 721 NW2d 815 (2006). But because Beacham did not request a *Franks* hearing, the trial court never addressed

---

[8] Beacham does not identify what "discoverable information" defense counsel failed to obtain.

[9] "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Beacham does not identify any witnesses that defense counsel should have called, or the testimony that those witnesses would have proffered. Regardless, Beacham expressly and unequivocally waived this issue when he stated on the record and under oath that he did not want defense counsel to call any witnesses to testify on his behalf. See *People v Carines*, 460 Mich 750, 752 n 7; 597 NW2d 130 (1999). "To hold otherwise would allow [a defendant] to harbor error at trial and then use that error as an appellate parachute." *People v Kowalski,* 489 Mich 488, 505; 803 NW2d 200 (2011) (quotation marks, citations, and ellipsis omitted).

[10] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (quotation marks and citation omitted). Because Beacham failed to properly address the merits of his arguments as to the three instances of conduct, we consider his challenges to those particular instances of conduct abandoned. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

this issue and it is unpreserved. We review unpreserved arguments for plain error affecting substantial rights. *People v Seals*, 285 Mich App 1, 4; 776 NW2d 314 (2009).[11]

An affidavit supporting a search warrant is presumed to be valid. *Franks*, 438 US at 171. If a criminal defendant challenges the veracity of a warrant affidavit and requests a *Franks* hearing, the Fourth Amendment requires the trial court to grant the request if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" *Id.* at 155-156. But mere conclusory statements fueled by a desire to simply cross-examine the affiant are insufficient to justify a hearing:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue. [*Id.* at 171-172.]

The *Franks* Court cautioned that "truthful" does not mean "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants." *Id.* at 165. "Truthful" means "that the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

In this case, Detective Scott Liskey's affidavit detailed his law enforcement experience and explained that the informant had successfully completed nine controlled buys of illegal drugs, the informant precisely described the details of each encounter, the informant was searched before and after each buy, the informant was under surveillance during each buy, the last controlled buy

---

[11] Beacham must show that error occurred, "the error was plain, i.e., clear or obvious," and that the plain error affected his or her substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, he must show that the error "affected the outcome of the lower court proceedings." *Id.* Reversal is warranted "only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citations omitted).

occurred within 48 hours of the warrant request, the substances from each buy tested positive for controlled substances, and the informant's information regarding the surveillance cameras was corroborated. Beacham failed to make a preliminary showing that the search warrant affidavit contained any false statements warranting an evidentiary hearing. Beacham failed to produce proof that statements in the affidavit were false or that these allegedly false statements were made knowingly and intentionally or with reckless disregard for the truth. Beacham's conclusory assertions demonstrate nothing more than a desire to cross-examine the confidential informant. Accordingly, the trial court's decision not to hold a hearing to inquire into the validity of the search warrant affidavit was not plain error affecting Beacham's substantial rights.[12]

## V. RACIAL COMPOSITION OF JURY

Beacham further argues that the racial representation of the prospective jurors was unfair and unreasonable, and the trial court erred by not conducting further inquiry into the racial makeup of the jury pool. We disagree.

"The Sixth Amendment of the United States Constitution guarantees a defendant the right to be tried by an impartial jury drawn from a fair cross section of the community." *People v Bryant,* 491 Mich 575, 595; 822 NW2d 124 (2012). Whether Beacham was denied this right is a constitutional question that we review de novo. *Id.* We review the trial court's factual findings for clear error, "which exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id.* (quotation marks and citations omitted).

Juries must be drawn from a source fairly representative of the community. *Taylor v Louisiana*, 419 US 522, 538; 95 S Ct 692; 42 L Ed 2d 690 (1975). "[J]ury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* A prima facie violation of the fair-cross-section requirement requires a defendant to show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [*Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).]

It is undisputed that African-Americans are a distinct group in the community. See *Bryant*, 491 Mich at 598. Accordingly, Beacham satisfied the first prong of *Duren*'s analysis. See *Duren*, 439 US at 364.

---

[12] Because Beacham's statement of questions presented does not identify the trial court's denial of the motion to suppress as an issue on appeal, he has waived the issue. See *Fonville*, 291 Mich App at 383; see also MCR 7.212(C)(5).

*Duren*'s second prong requires Beacham to establish that representation of African-Americans "in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community[.]" *Id.* There is no universal test or preferred method to measure whether representation of a distinct group is fair and reasonable. *People v Smith*, 463 Mich 199, 203; 615 NW2d 1 (2000). Because the United States Supreme Court has not identified a method or test, and the federal courts have applied various tests,[13] our Supreme Court directed "that no individual method should be used exclusive of the others" and adopted "a case-by-case approach." *Id.* at 204. "Provided that the parties proffer sufficient evidence, courts should consider the results of all the tests in determining whether representation was fair and reasonable." *Id.*

In this case, the trial court observed that, of the 46 potential jurors in defendant's venire,[14] there was one African-American male and another "brown" male who appeared to have been "mixed race." The trial court acknowledged that this was "below what the Muskegon County representation is." On appeal, Beacham provides a statistical analysis of number of African-Americans in his venire compared to the population of African-Americans in Muskegon County, and argues that the trial court failed to investigate further. It is inadequate to consider the representation of African-Americans *only* in defendant's venire. *Bryant*, 491 Mich at 582. "[A] court must examine the composition of jury pools or venires *over time* using the most reliable data available to determine whether representation of a distinct group is fair and reasonable." *Id.* at 599-600 (emphasis in original). "Because underrepresentation in a single venire could result from chance, evaluating whether representation of a distinct group is fair and reasonable requires evaluating venire composition over time." *Id.* at 602. "Only then is it possible to see the degree of any underrepresentation." *Id.*

It was Beacham's burden to present sufficient evidence to the trial court to establish a historical pattern of unreasonable underrepresentation of African-Americans in jury venires in Muskegon County. But he failed to present any evidence. He simply pointed out a perceived underrepresentation of African-Americans in his jury venire, and did not provide any historical information regarding the race of potential jurors in Muskegon County. It was Beacham's burden to provide "the most reliable data available." *Id.* at 602. Although Beacham included some statistical evidence in his brief on appeal, all of it is related to his jury venire. Regardless, none of the statistical evidence was presented to the trial court. We may not consider an expanded record on appeal. *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). Beacham has failed to show that the representation of African-Americans in Muskegon County venires over time was not fair and reasonable.

Under the third *Duren* prong, it was Beacham's burden to establish that the underrepresentation of African-Americans is "inherent in the particular jury-selection process

---

[13] The relevant statistical tests include the absolute disparity test, the comparative disparity test, and the standard deviation test. *Smith*, 463 Mich at 203.

[14] The *Bryant* Court defined "jury pool" as "the group of people summoned to appear for jury duty on a particular day," and "venire as "the group of potential jurors in the courtroom from which a defendant's petit jury are selected." *Bryant*, 491 Mich at 583 n 4.

utilized." *Duren*, 439 US at 366. But Beacham provided no evidence indicating a "systematic" exclusion of African–Americans from Muskegon County jury pools. Muskegon County Clerk Nancy Waters testified regarding Muskegon County's procedure for composing jury pools and venires. Ms. Waters, also an African-American, vehemently denied that Muskegon County systemically excluded African-Americans in the jury-selection process. She explained that, in March of each year, the Secretary of State provides every county clerk in the state with a confidential database of "every person in the county who has a driver's license or a state ID," and jury pools are drawn from that database. The potential-juror database does not include racial identities, and Muskegon County does not ask any questions about race on the potential juror questionnaires. Ms. Waters explained the random process to select a jury pool:

> We never see the addresses of where they might live that would put them maybe in an urban area . . . everything is done randomly. And the picking of them is always by the computer randomly spitting out the 200 for that week. And it's a five-week process, so we're spitting them out from the computer well in advance of even knowing whether there's going to be a jury trial or not, who the defendant might be, what's going on or anything like that.

Ms. Waters acknowledged that the jury pool database may not include people who would otherwise be eligible because they either do not have a driver's license or personal identification. But she maintained that this was not a unique concern for Muskegon County. She cited other issues that may keep persons out of the jury pool, such as health problems, language issues, felony convictions, vacations, failure to respond to summonses, death, and relocation. Beacham and his counsel were afforded an opportunity to cross-examine Ms. Waters, but declined. We discern no clear error from the record. Beacham failed to establish a prima facie case for violation of the Sixth Amendment's fair-cross-section requirement with regard to race. *Bryant*, 491 Mich at 597.

## VI. LESSER INCLUDED OFFENSE

Finally, Beacham argues that the prosecution failed to provide him with adequate notice of its intent to pursue the lesser charge of possession of a controlled substance. We disagree.

Whether an offense is a lesser included offense is a question of law that we review de novo. *People v Mendoza*, 468 Mich 527, 531; 664 NW2d 685 (2003). "A necessarily lesser included offense is an offense whose elements are completely subsumed in the greater offense." *Id*. at 540. Conversely, "cognate offenses share with a greater offense several elements and are of the same class or category, but they contain elements not found in the greater offense." *People v Robar*, 321 Mich App 106, 129; 910 NW2d 328 (2017). Simple possession is a necessarily included lesser offense to possession with intent to deliver "[b]ecause the elements of simple possession are completely subsumed within the elements of the greater offense of possession with intent to deliver a controlled substance." *Id*. at 131.

Pursuant the prosecution's request, and over Beacham's objection, the trial court instructed the jury on the elements of possession with intent to deliver and the lesser included offense of simple possession. "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*,

466 Mich 335, 357; 646 NW2d 127 (2002), overruled in part on other grounds by *People v Mendoza,* 468 Mich 527 (2003). Because the lesser included offense did not require the jury to find that Beacham intended to deliver the controlled substance and a rational view of the evidence supported the instruction on the lesser offense, we find no error.

Affirmed with respect to Beacham's convictions and sentences, and remanded to allow the trial court to perform the ministerial task of correcting a clerical error in the judgment of sentence. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica