*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

JAMES BYARS,

    Defendant-Appellant.

UNPUBLISHED
December 16, 2025
11:46 AM

No. 367303
Alpena Circuit Court
LC No. 12-004965-FC

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

  More than a decade ago, a jury convicted defendant, James Byars, of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13 years of age). Defendant missed the opportunity to appeal at that point, but ten years later this Court reinstated his appellate rights. See *People v Byars*, 346 Mich App 554, 574; 13 NW3d 328 (2023). Consequently, defendant now appeals of right, contesting the admission of other-acts evidence under MCL 768.27a, arguing that the trial court abused its discretion by refusing to admit psychological reports regarding the victim, and claiming that his trial counsel was ineffective. Defendant also contends, in a Standard 4 brief,[1] that his rights to due process and a speedy appeal were violated, the trial court lacked jurisdiction, and the assessment of attorney fees and court costs was unconstitutional. We affirm.

## I. FACTUAL BACKGROUND

  In April 2002, when the victim, AK, was six years old, she and her younger sister were left with her former stepfather and his brother while AK's mother was in the hospital. Defendant, who was a friend of AK's caretakers, was invited to stay and sleep on the couch at the time. AK testified that, one night after she watched a movie with defendant in the living room, she fell asleep on the couch. When AK woke up in the morning, defendant was on the couch with her. He had AK on

---

[1] "A 'Standard 4' brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2005)." *People v Lowrey*, 342 Mich App 99, 103 n 1; 993 NW2d 62 (2022).

her side pulled up against him, and he was trying to kiss and touch her. AK told him, "no kisses, no hugs," and kept saying "no," but defendant put his hand in AK's underwear, moved it around, and digitally penetrated her vagina. AK felt pain and again told defendant to stop. Once AK got out of defendant's grasp, she ran to her room and cried. She refused to go to school for days until her mother returned, but AK did not tell anyone what happened.

AK began cognitive behavioral therapy at age 16 and eventually disclosed to her counselor what had happened, stating that digital-vaginal penetration occurred. AK disclosed the incident to her mother, and AK's counselor reported the matter to the Alpena Police Department. AK took part in two forensic interviews, and in both of the interviews she disclosed that defendant digitally penetrated her vagina. As a result, defendant was charged with one count of CSC-I.

Before trial, defendant sought discovery of AK's mental-health records, and an *in camera* review was conducted by the trial court to determine which records were exculpatory. The court identified two psychological reports as relevant—one report indicated that AK denied she had ever been sexually assaulted, and the other report contradicted AK's diagnosis of conversion disorder. The trial court decided that the record of AK's denial of the assault was exculpatory, but the record regarding AK's diagnosis of conversion disorder was inadmissible.

The prosecution filed a pretrial notice to introduce other-acts evidence under MCL 768.27a (evidence of another listed crime against a minor) and MRE 404(b) (other crimes, wrongs, or acts). Specifically, the prosecution sought to admit defendant's prior conviction for CSC against a minor, BG. Over defendant's objection, the trial court declared that evidence was admissible. Defendant renewed his objections to the admission of the other-acts evidence at trial, but his objections were overruled. At trial, BG testified that defendant was her father's friend from prison. BG explained that, in 2010, when she was 15 years old, defendant incessantly called and messaged her, and asked her for a picture of her vagina, which BG sent. Defendant sent BG a picture of his penis and told BG that he loved and missed her. One night, BG's father asked defendant to pick up BG and take her to defendant's home. BG testified that, when they arrived there, defendant started kissing her and taking off her clothes. She told defendant that she wanted to wait, but they had sex three times, causing her pain. They engaged in sex two other times at a park. The pictures BG sent to defendant were found by defendant's girlfriend, who disclosed them to BG's family. Defendant told BG to delete everything from her phone. BG's mother learned what had occurred and reported defendant to the police, and defendant eventually pleaded no-contest to third-degree criminal sexual conduct (CSC-III), MCL 750.520d.

Defendant testified on his own behalf at trial and denied inappropriately touching AK. He stated that he was currently incarcerated for a term of 5 to 15 years for the CSC-III conviction, but he claimed that the consequences of the no-contest plea were not explained to him and that he felt pressured to enter a plea. He also described his appellate efforts in that matter. Defendant further asserted his innocence in the CSC-III case involving BG, and he refuted BG's testimony.

The jury convicted defendant of CSC-I, and he was thereafter sentenced, as a third-offense habitual offender, MCL 769.11, to 20 to 40 years in prison.[2] In 2023, this Court reversed the trial court's order denying his motion to restore his appellate rights and remanded the matter to the trial court for further proceedings. *Byars*, 346 Mich App at 574. On remand, defendant moved for a new trial or, in the alternative, a *Ginther*[3] hearing, but the trial court denied that motion. Defendant now appeals of right his 2013 conviction of CSC-I against AK.

## II. LEGAL ANALYSIS

On appeal, defendant argues that the trial court erred by allowing other-acts evidence under MCL 768.27a, and that that statute violates the Ex Post Facto clauses of both the United States and the Michigan Constitutions. Defendant also contends that the trial court erred by refusing to admit certain psychological records pertaining to AK. Defendant further insists that his trial counsel was ineffective in several respects. Finally, in a Standard 4 brief, defendant raises issues regarding his right to a speedy appeal, the trial court's jurisdiction, and the assessment of attorney fees and court costs. We will address these arguments in turn.

### A. OTHER-ACTS EVIDENCE UNDER MCL 768.27a

Defendant faults the trial court for failing to conduct the balancing test prescribed by MRE 403 before admitting the other-acts evidence under MCL 768.27a, and he argues that the incidents described at his trial were insufficiently similar. Additionally, although he acknowledges binding precedent to the contrary, defendant asserts that MCL 768.27a violates the Ex Post Facto clauses of the United States and Michigan Constitutions as applied to him because the statute was effective in 2006, but the conduct underlying his CSC-III conviction regarding BG occurred in 2002. Thus, he insists that, but for MCL 768.27a, the other-acts evidence would have been inadmissible at trial as propensity evidence pursuant to MRE 404(b). We reject all of those arguments.

### 1. ADMISSIBILITY OF THE OTHER-ACTS EVIDENCE

Defendant contends the trial court erred by failing to conduct the balancing test prescribed by MRE 403 before admitting other-acts evidence under MCL 768.27a, and he claims that the only similarity between the assault of AK and the assault of BG was the fact that both victims referred to defendant as "Uncle Jimmy." A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion, *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003), which occurs when "the trial court renders a decision falling outside the range of principled decisions." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012) (citation omitted). Whether a rule of evidence bars admission of evidence is a question of law reviewed de novo. *McDaniel*, 469 Mich at 412. A preserved challenge to the erroneous admission of evidence does not constitute grounds for reversal "unless, after an examination of the entire cause, it affirmatively appears that it is more

---

[2] That sentence was imposed before our Legislature amended MCL 750.520b(2)(b) to mandate a minimum sentence of 25 years' imprisonment for defendant's offense of conviction.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

probable than not that the error was outcome determinative." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

Ordinarily, MRE 404(b) mandates "exclusion of other-acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense," but under MCL 768.27a, other-acts evidence may be offered " 'for its bearing on any matter to which it is relevant,' which includes evidence of a defendant's propensity to commit a crime." *People v Hoskins*, 342 Mich App 194, 201-202; 993 NW2d 48 (2022), quoting MCL 768.27a. "[U]nlike MRE 404(b), the purpose of MCL 768.27a is to allow juries to consider evidence of other acts the defendant committed to show the defendant's character and propensity to commit the charged crime." *Id.* at 202 (quotation marks and citation omitted). Evidence that is admissible under MCL 768.27a may nonetheless be excluded under the balancing test in MRE 403. *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012). Specifically, MRE 403 allows for exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." When applying the MRE 403 balancing test to evidence offered under MCL 768.27a, the trial court "must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. The trial court must consider the following factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id.* at 487-488.]

"While the factors are important tools that may inform a court's decision to admit or exclude other-acts evidence, they do not supersede the standard plainly provided in MRE 403 itself," so there is no requirement that the trial court must explicitly evaluate the *Watkins* factors. *Hoskins*, 342 Mich App at 203 (quotation marks and citation omitted).

Before trial, defendant objected to the admission of evidence regarding defendant's assault of BG, describing that evidence as inadmissible under MRE 404(b), and arguing that MCL 768.27a cannot be applied retroactively to the incident involving BG. The trial court determined that MCL 768.27a governed, that the evidence was not being offered under MRE 404(b), and so the evidence was admissible. Defendant did not challenge the admissibility of the evidence under MRE 403.

Before BG testified, defendant objected, stating that the prejudicial effect of her testimony outweighed the probative value under MRE 403, but defendant incorrectly referred to the evidence as offered under MRE 404(b), rather than MCL 768.27a. The prosecution incorrectly asserted that the trial court had already determined the evidence's admissibility under MRE 403. The trial court asked if anything had changed since its last ruling. Defendant conceded that nothing had changed, so the trial court allowed BG to testify. After that, the prosecution presented testimony from BG's mother without objection or cross-examination from defendant. The prosecution thereafter called Sergeant Jeffrey Davidson of the Northfield Township Police Department to describe defendant's sexual relationship with BG, but defendant objected based on MRE 403. The trial court noted the MRE 403 balancing test, commented that it "intend[ed] to exercise that" balancing test, and noted

defendant's objection for the record. The trial court did not conduct an evaluation under MRE 403 or *Watkins*.

According to MCL 768.27a, evidence that "the defendant committed another listed offense against a minor" is admissible, and CSC-III constitutes a listed offense. MCL 768.27a(2)(a); MCL 28.722(i), (v)(*iv*). The trial court did not err by determining that defendant's sexual acts with BG and subsequent conviction for CSC-III were admissible pursuant to MCL 768.27a. Regarding the MRE 403 analysis, both AK and BG were minors at the time, the incidents occurred in 2002 and 2010, and in both cases defendant was friends with the victims' parents. While defendant's assault of AK constituted a single incident whereas his sexual relations with BG comprised approximately four incidents, the sexual assaults of the victims had sufficient temporal proximity and similarity, favoring admission of the evidence. *Watkins*, 491 Mich at 487-488. Moreover, neither assault required proof beyond the victim's testimony to support a conviction, see MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g."), but other witnesses testified about the nude images that were shared between defendant and BG, which bolstered the "reliability of the evidence supporting the occurrence of the other" act. *Watkins*, 491 Mich at 487. Despite the trial court's failure to engage in MRE 403 analysis, when weighing "the propensity inference in favor of the evidence's probative value rather than its prejudicial effect," *id*., we do not find that the trial court abused its discretion by admitting the evidence under MCL 768.27a.

## 2. EX POST FACTO ANALYSIS OF MCL 768.27a

Defendant asserts that MCL 768.27a violates the Ex Post Facto clauses of the United States and the Michigan Constitutions as applied to him because that statute went into effect in 2006, but the conduct giving rise to his CSC-III conviction involving BG occurred in 2002. This Court has already addressed that specific argument. In *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007), this Court ruled that MCL 768.27a does not constitute an "ex post facto law," even when the alleged abuse in the other-acts incident took place before the effective date of MCL 768.27a, because that statute "does not lower the quantum of proof or value of the evidence needed to convict a defendant," and a defendant may be convicted solely based upon testimony of a victim of sexual assault. See MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g."). We find no defect in that analysis, and we are bound by that decision. MCR 7.215(C)(2). Thus, defendant is not entitled to relief on that basis.

## B. PSYCHOLOGICAL REPORTS

Defendant contests the trial court's failure to admit into evidence two psychological reports regarding AK. As asserted by defendant, one report would have allowed defendant to attack AK's credibility over statements that she was diagnosed with conversion disorder, and defendant claims that the other report reflects AK's assertion that the sexual assault by defendant did not occur.

A trial court's ruling excluding evidence is reviewed for an abuse of discretion, *McDaniel*, 469 Mich at 412, which occurs only if "the trial court renders a decision falling outside the range of principled decisions." *Rao*, 491 Mich at 279 (citation omitted). Privileged information may become discoverable in a criminal proceeding only when the defendant "can establish a reasonable probability that the privileged records are likely to contain material information necessary to his

defense[.]" *People v Stanaway*, 446 Mich 643, 649; 521 NW2d 557 (1994). If a defendant makes that showing, "an *in camera* review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense." *Id*. at 649-650. A defendant's "generalized assertion that the counseling records may contain evidence useful for impeachment on cross-examination" is insufficient to warrant an *in camera* review. *Id*. at 681.

At the preliminary examination in this matter, AK testified that she had been seeing mental-health professionals, and that she was diagnosed with conversion disorder, which caused paralysis in her legs requiring her to relearn how to walk. Prior to trial, defendant requested the admission of AK's psychological records, and the trial court conducted an *in camera* review. The trial court identified two potentially exculpatory records: one report asserting AK denied ever being sexually assaulted; and one record contradicting AK's assertion that she had conversion disorder. The trial court noted that the former was clearly exculpatory, but found that the latter was "clearly" excluded by *Stanaway*. On cross-examination at trial, AK stated that she could not remember the particular evaluation that generated the psychological report reflecting her denial of being sexually assaulted, and AK commented that she "never told anybody" until her disclosure. Defendant moved to admit the report for the purpose of impeaching AK, but the trial court denied defendant's request pursuant to *People v LaLone*, 432 Mich 103; 437 NW2d 611 (1989).

Turning to defendant's arguments on appeal about AK's conversion disorder diagnosis, the trial court determined that it was not admissible pursuant to *Stanaway*, and defendant did not cross-examine AK at trial about her diagnosis. Conversion disorder is:

"a disorder in which a person experiences blindness, paralysis, or other symptoms affecting the nervous system that cannot be explained solely by a physical illness or injury. Symptoms usually begin suddenly after a period of emotional or physical distress or psychological conflict. Conversion disorder is thought to be caused by the body's reaction to a stressful physical or emotional event." [*Cramer v Transitional Health Servs of Wayne*, 512 Mich 23, 60 n 3; 1 NW3d 9 (2023) (ZAHRA, J., dissenting), quoting Genetic and Rare Diseases Information Center, Conversion Disorder <http://rarediseases.info.nih.gov/diseases/6191/conversion-disorder> (accessed July 14, 2023).]

Referencing *Stanaway*, we presume that the trial court determined that such a medical diagnosis—and AK's purported inconsistency about it—did not constitute "material information necessary to his defense[.]" *Stanaway*, 446 Mich at 649-650. That analysis is sound because AK's conversion disorder diagnosis (or its validity) is immaterial to the determination of whether defendant sexually assaulted AK. Moreover, because that condition often manifests itself "after a period of emotional or physical distress or psychological conflict," *Cramer*, 512 Mich at 60 n 3 (ZAHRA, J., dissenting), discussion about whether AK suffered from such a disorder would have been against defendant's interests at trial. Thus, the trial court did not abuse its discretion by refusing to admit that evidence.

As for AK's purported prior inconsistent statement, the report containing the statement was written by a mental-health professional, rather than AK. "When a witness claims not to remember making a prior inconsistent statement," impeachment "by extrinsic evidence of that statement" is proper, but the "purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *People v Jenkins*, 450 Mich

249, 256; 537 NW2d 828 (1995). "Because a written memorandum of an oral statement is itself hearsay, allowing the impeaching witness to read from the" psychological evaluation "constitutes the admission of hearsay, unless a proper foundation is laid for [its] admission . . . ." *Id.* Defendant neither furnished a proper foundation for the admission of the report nor identified an exception to the rule against hearsay. MRE 802-804. Beyond that, AK denied remembering making any such statement during a psychological evaluation, and she stated that she had not disclosed defendant's assault of her at that point. Such testimony, in our view, is not inconsistent with the asserted denial of ever being sexually assaulted memorialized in the psychological report at issue. Thus, the trial court did not commit an abuse of discretion in its handling of that matter.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that his trial attorney was ineffective in four different ways, namely, for failing to impeach the credibility of BG, failing to object to testimony about defendant's previous incarceration, failing to impeach the credibility of AK, and failing to object to prosecutorial error.[4] Defendant moved for a new trial in the trial court, stating claims of ineffective assistance of counsel and alternatively requesting that the trial court hold a *Ginther* hearing. The trial court denied both of those requests. Now, before this Court, defendant does not challenge the trial court's denial of a *Ginther* hearing, but defendant asserts that each of his claims of ineffective assistance of counsel should result in reversal of his conviction. Alternatively, he requests that we remand the case for a *Ginther* hearing. We will address each of defendant's claims in turn.

Whether a defendant was denied effective assistance of counsel involves a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The findings of fact made by a trial court are reviewed for clear error, but constitutional determinations are reviewed de novo. *Id.* "Clear error" exists when this Court "is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted). But because no evidentiary hearing took place, our review "is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

To demonstrate ineffective assistance of counsel, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome [of defendant's trial] would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Significantly, the effective assistance of counsel "is presumed, and the defendant bears a heavy burden to prove otherwise." *Mack*, 265 Mich App at 129. Thus, defendant "must overcome the strong presumption that defense counsel's performance was born from a sound trial strategy," *Trakhtenberg*, 493 Mich at 52, and we cannot substitute our judgment for that of counsel regarding matters of trial strategy,

---

[4] Defendant argues, in a single sentence in his brief submitted to this Court, that his trial attorney additionally was ineffective for failing to request that the jury be instructed on a lesser-included offense. "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue," *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004), and we decline to address defendant's assertion about that purported deficiency in representation.

nor will we assess counsel's competence with the benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

## 1. FAILURE TO IMPEACH BG

Defendant faults his trial attorney for failing to properly impeach BG because counsel did not review and utilize records that he received from defendant's then-girlfriend on the morning of trial.[5] In support of that contention, defendant points to the same attachments that he submitted to the trial court with his motion for a new trial. Those documents are: (1) a notarized statement from defendant's then-girlfriend, dated after defendant was convicted and sentenced; (2) a confidential forensic interview summary concerning BG from 2010; (3) a transcript from 2011, the caption of which is obscured by a handwritten notation; (4) a purported excerpt from a police incident report about BG from 2010; (5) purported phone-call and text-message records from defendant's phone from 2010; and (6) letters from eight people, including defendant, asserting BG was not credible, ranging in date from April to June 2013.[6] Defendant contends that all of those records would have established: (1) BG predominantly called defendant's phone, contrary to her testimony that it was the other way around; (2) BG sent defendant a picture of her breasts and defendant instructed her to delete the picture; and (3) BG's claim that defendant aggressively pursued her was not correct. Although those records were attached to defendant's postconviction motion in the trial court, none of those records were authenticated or properly admitted in the lower-court record, and our review on appeal is restricted to the actual record before us. *Mack*, 265 Mich App at 125.

Regardless of whether BG pursued defendant or called him more frequently, BG testified that she was only 15 years old when she and defendant engaged in several sexual acts, albeit with her consent, and she sent nude images of herself to defendant. Defendant's order of conviction for his no-contest plea to CSC-III with BG was admitted as an exhibit at the trial. Even if defendant's trial attorney had been better equipped to cross-examine BG and impeach her credibility, nothing before us contradicts BG's testimony that she and defendant had a sexual relationship. Moreover, defendant's argument does not satisfy the prejudice prong by explaining how more effective cross-examination of BG would have led to an acquittal of CSC-I regarding AK at trial. *Trakhtenberg*, 493 Mich at 51. Thus, defendant has not established ineffective assistance of counsel warranting relief on appeal.

---

[5] The crux of defendant's argument on appeal is his assertion that his trial counsel "failed to use impeachment evidence available through [sic] him for the 404b [sic] witness [BG]," arguing that trial counsel failed to impeach her credibility on cross-examination. We address this argument— despite it not being properly contained in defendant's statement of the questions presented, which would ordinarily subject the matter to waiver on appeal, *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011)—because defendant has sufficiently briefed the issue. Defendant, however, has not sufficiently developed his argument that his trial counsel was ineffective for failing to use those records to prevent the admission of BG's testimony pursuant to MCL 768.27a, and we deem his claim in that regard abandoned. *McPherson*, 263 Mich App at 136.

[6] We note that defendant was found guilty on June 14, 2013.

## 2. DEFENDANT'S INCARCERATION

Defendant blames his trial attorney for failing to object to the testimony about defendant's prior imprisonment. During his opening statement, defendant's trial attorney acknowledged that defendant had a prior conviction for sexual assault. AK testified that, after disclosing sexual abuse by defendant to her mother, AK remembered defendant's name, searched for him on "OTIS,"[7] i.e., the Michigan Department of Corrections Offender Information Tracking System, and recognized him by his picture. BG and her mother testified that BG's father and defendant were friends from prison. In addition, Sergeant Davidson testified that, during his interview of defendant, defendant admitted that he and BG's father were friends while they were in prison together.

Evidence about a defendant's prior incarceration is generally not admissible at trial, and a defendant is denied a fair trial when a witness testifies about the defendant's prior incarceration in response to the prosecutor's question, and the answer was "clearly anticipated or hoped for, [and] was calculated to prejudice the minds of the jurors against the defendant." *People v Greenway*, 365 Mich 547, 551; 114 NW2d 188 (1962). The testimony about defendant's prior incarceration was not elicited in that manner. Instead, the statements were all passing references to how victims' parents knew defendant, or how AK identified defendant online, or defendant's explanation to Sergeant Davidson of how he knew BG's father. Further, defendant himself testified at trial that he became friends with BG's father while they were both incarcerated, and that he was incarcerated at the time of trial. Although measures could have been taken by defense counsel, the prosecution, and the trial court to restrict the jurors' knowledge of defendant's incarceration, defendant has not established that the lack of those references would have resulted in an acquittal of CSC-I at trial. *Trakhtenberg*, 493 Mich at 51. Therefore, defendant is not entitled to any relief on that claim.

## 3. FAILURE TO IMPEACH AK

Defendant asserts that, in a recording of a forensic interview of AK, "which can be made available for the Court to hear," AK denied that defendant penetrated her vagina and stated that it was "just heavy petting," so defendant's trial attorney was ineffective for failing to impeach AK with that alleged prior inconsistent statement. The recording is not part of the record before this Court, and our review is limited to the record before us. *Mack*, 265 Mich App at 125. Defendant's argument is predicated merely on his own assertions in his brief, and he fails to establish that use of the recording at trial would have resulted in an acquittal of CSC-I. *Trakhtenberg*, 493 Mich at 51. Accordingly, defendant is not entitled to relief on that basis.

## 4. PROSECUTORIAL ERROR

Defendant insists the prosecutor's remarks in closing argument constituted "prosecutorial misconduct,"[8] including impermissible vouching for the credibility of witnesses, commenting on

---

[7] The record in this matter incorrectly refers to that acronym as "Ottis."

[8] As this Court has noted, "[a]lthough we recognize that the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, we agree that the term 'misconduct' is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's conduct violates

-9-

defendant's appeal in BG's case, and trying to make an issue of defendant's spirituality. Defendant asserts that his trial counsel was ineffective for failing to object to all of those remarks.

To support his assertion that the prosecution vouched for witnesses' credibility, defendant cites the following remarks by the prosecutor in closing argument: "That's what happened"; AK's counselor came "in here and [told] you exactly what happened . . . [a]nd she told you exactly how the disclosure occurred"; and BG "talked to you exactly about what happened."[9] A prosecutor is not permitted to "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness['s] truthfulness." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010) (quotation marks and citation omitted). "The danger is that the jury will be persuaded by the implication that the prosecutor has knowledge that the jury does not . . . ." *Id*. at 477. Nothing in any of the cited portions of the prosecutor's closing argument rises to the level of prosecutorial error, and it would have been futile for defendant's trial counsel to object. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (failing to "raise a futile objection does not constitute ineffective assistance of counsel"). Defendant's trial counsel was not ineffective in failing to object during the prosecutor's closing argument.

As to BG's case, the prosecution cross-examined defendant about his CSC-III conviction, his declaration of innocence, his testimony about being pressured into entering a no-contest plea, and his claim that his appeal was "going places." Defendant conceded that he appealed three times and was denied relief each time because his claims lacked merit. Defendant further acknowledged that his only remaining recourse involved filing a federal habeas corpus petition or filing a motion for relief from judgment in the trial court under MCR 6.501 *et seq*. The prosecutor stated during closing argument that defendant:

> knew what he was doing when he entered the plea. Yet, he continues to try and fight it. And this is going places. No, it's not. He's at his last stop. He's at federal court. He's trying. Court of Appeals in Michigan, they didn't trust him. They didn't believe him. Dismissed it out of hand.

Defendant asserts that that argument amounted to improper character evidence.[10] Prosecutors are "accorded great latitude regarding their arguments and conduct," and they "are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citations omitted). When "a defendant takes the stand and testifies in his own defense, his credibility may

---

the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Here, defendant's challenges are more properly characterized as matters of prosecutorial "error." *Id*. at 88.

[9] Defendant's brief misquotes those passages from the record. Our recitation of the language here constitutes verbatim quotes from the transcript.

[10] We do not find that the comments constituted improper character evidence. Indeed, statements made in closing argument are not evidence at all. See M Crim JI 2.6(5), 3.5(5). But we note that nothing in any opinion or order of this Court expressed any lack of trust in defendant or disbelief in his positions.

be impeached and his testimony assailed like that of any other witness." *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995) (quotation marks and citation omitted). Also, the "prosecutor may fairly respond to an issue raised by the defendant," and the prosecutor's "comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Defendant's testimony on direct examination opened the door for the prosecution to fairly cross-examine him about his claims concerning appeals of his CSC-III conviction. Nothing in the quoted excerpts of the prosecutor's closing argument rises to the level of prosecutorial error, so it would have been futile for defendant's attorney to object. *Ericksen*, 288 Mich App at 201. Defendant's trial counsel, therefore, was not ineffective in that regard.

Turning to defendant's spirituality, defendant insists that the prosecutor remarked during closing argument that defendant "has no soul," but that mischaracterizes the record. AK testified that, during defendant's assault of her, she remembered the look in his eyes, and that "[t]hey're black. They have no soul." When she looked up defendant on OTIS, she "looked into those eyes," and it "took [her] right back" to the incident. During closing argument, the prosecutor commented that AK "still remembered Uncle Jimmy's eyes and his hair. His eyes; look at his eyes. There's no soul." The record reflects that the prosecutor was simply referring to AK's testimony, and not commenting on defendant's spirituality. Nothing in the quoted excerpts of the prosecutor's closing argument rises to the level of prosecutorial error, and it would have been futile for defendant's trial counsel to object. *Id*. Thus, defendant's trial counsel was not ineffective in that regard.

### D. STANDARD 4 BRIEF

Defendant contends in his Standard 4 brief that his rights to grand-jury review, due process, and a "speedy appeal" were violated, that the trial court lacked jurisdiction, and that the assessment of attorney fees and court costs was unconstitutional. We shall address these arguments in turn.

### 1. RIGHT TO A GRAND JURY

Defendant claims that, because he was never indicted by a grand jury as guaranteed by the Fifth Amendment of the United States Constitution, which applies to his state conviction pursuant to the Fourteenth Amendment, the trial court lacked jurisdiction over his case. Defendant further argues that he was entitled to indictment by a grand jury based upon the Privileges and Immunities Clause of the Fourteenth Amendment. However, the United States Supreme Court has concluded that the Fourteenth Amendment does not require states to apply the Fifth Amendment's grand-jury requirement, *Apprendi v New Jersey*, 530 US 466, 477 n 3; 120 S Ct 2348; 147 L Ed 2d 435 (2000); *Rose v Mitchell*, 443 US 545, 557 n 7; 99 S Ct 2993; 61 L Ed 2d 739 (1979); *Alexander v Louisiana*, 405 US 625, 633; 92 S Ct 1221; 31 L Ed 2d 536 (1972); *Hurtado v California*, 110 US 516, 520-521, 537-538; 4 S Ct 111; 28 L Ed 232 (1884), and the Privileges and Immunities Clause concerns only citizens of the United States, not citizens of the individual states. See *Slaughter-House Cases*, 83 US 36, 74-75; 21 L Ed 394 (1872); *McDonald v Chicago*, 561 US 742, 758; 130 S Ct 3020; 177 L Ed 2d 894 (2010). Privileges and immunities include only certain narrow rights, which do not include the right to a grand jury indictment. *McDonald*, 561 US at 755. Defendant's argument is meritless.

## 2. "SPEEDY APPEAL"

Defendant contends that he was denied the right to a "speedy appeal," citing the protracted nature of his postconviction proceedings and claiming he was prejudiced because "any exculpatory or impeaching evidence is no longer available," but failing to specify what that evidence could be. Defendant cites no legal authority providing that a defendant's right to a speedy trial, as guaranteed under the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, extends to the appellate process, and presenting an argument without adequate citation to authority results in abandonment of the argument. *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009). Further, a defendant's "circuitous appellate route" that is combined with "dilatoriness and violations of court rule[s]," but nonetheless results in appellate review of the merits of his case, does not entitle that defendant to a new trial. *People v Gorka*, 381 Mich 515, 520; 164 NW2d 30 (1969). Defendant has now received this Court's consideration of the merits of his appeal, and his complaint about deprivation of a "speedy appeal" is now unavailing.

## 3. TRIAL-COURT JURISDICTION

Defendant contends that his conviction is void because his charging documents referred to Michigan Compiled Laws in violation of the Michigan Constitution's requirement of an enacting clause. A party who challenges the constitutionality of a statute must preserve the issue for review by raising it in the trial court. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). Defendant's jurisdictional challenge is raised for the first time on appeal, so it is unpreserved and subject to the plain-error standard. *Id*. Defendant bears the burden of showing a "clear or obvious" error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764. "Statutes are presumed to be constitutional and must be so construed unless their unconstitutionality is readily apparent." *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001). The burden of proving the invalidity of a statute rests on the party who challenges it. *Vandenberg*, 307 Mich App at 62. Defendant has not shown that MCL 750.520b is unconstitutional. Defendant also has not satisfied the plain-error standard in this matter. Therefore, defendant's argument lacks merit, and he is not entitled to relief.

## 4. COURT COSTS AND ATTORNEY FEES

Defendant argues that MCL 769.1k(1)(b)(*iii*) and (*iv*), the statutory provisions allowing for assessment of court costs and attorney fees, are unconstitutional. Whenever a statute is challenged on constitutional grounds, it "is presumed to be constitutional and will be construed as such unless its constitutionality is clearly apparent." *People v Johnson*, 336 Mich App 688, 692; 971 NW2d 692 (2021) (quotation marks and citation omitted). A constitutional challenge to the validity of a statute can be facial or as-applied. *Id*. Although defendant's Standard 4 brief claims his challenge is as-applied, he does not challenge the costs and fees that he was assessed at sentencing. Instead, he argues that MCL 769.1k(1)(b)(*iii*) deprives all criminal defendants of their due-process right to an impartial judge, and MCL 769.1k(1)(b)(*iv*) incentivizes public defenders to obtain convictions in order to get paid, rendering his argument a facial challenge to those portions of that statute. As a result, he must establish that "no set of circumstances exists under which the act would be valid."

*Id.* at 693 (quotation marks and citation omitted). This Court has held that MCL 769.1k(1)(b)(*iii*) is not facially unconstitutional, *id.* at 691, nor is MCL 769.1k(1)(b)(*iv*) facially unconstitutional. *People v Moore*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371556); slip op at 5. Thus, defendant is not entitled to any relief from his assessments.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young